### *ASSIGNMENT OF INTELLECTUAL PROPERTY RIGHTS RELATING TO THE PRESIDENT'S HOUSE EXHIBIT*

This Assignment Of Intellectual Property Rights Relating to the President's House Exhibit ("Assignment" or "Agreement") is made and is effective as of December 8, 2015 (the "Effective Date") by and between the United States of America, acting through the National Park Service of the United States Department of the Interior ( "NPS") and the City of Philadelphia ("City"), a municipal corporation under the laws of Pennsylvania (collectively, the "Parties" and each a "Party").

### *RECITALS*

      A.  The City and NPS entered into that certain Cooperative Agreement for the President's House Project and Archeological Research Dig, dated September 1, 2006, as amended (the "Cooperative Agreement") to establish a public exhibit at Independence National Historic Park in Philadelphia relating to the site of the house occupied by former Presidents George Washington and John Adams (the "President's House Exhibit," sometimes referred to herein as the "Exhibit" or the "Project");

      B.  The City and Kelly/Maiello Management, LLC ("Provider") entered into that certain Commission Agreement for Design, Fabrication and Installation of Public Exhibit dated October 5, 2007, as amended (the "Commission Agreement") under which Provider furnished "Services" and "Materials" and "Installation" (all as defined in the Commission Agreement) to establish the President's House Exhibit, including, without limitation, the "Interpretive Works," as defined in the Commission Agreement, that were created for the Exhibit (collectively, the "President's House Services and Materials"). The President's House Services and Materials included certain "Interpretive Works" as defined in the Commission Agreement.

      C.  Provider entered into an agreement (the "KMI Agreement") with Kelly/Maiello, Inc. ("KMI") according to which KMI, through itself and its sub-consultants, agreed to provide certain of the Services and Materials for the President's House Exhibit.

      D.  KMI's sub-consultant Louis Massiah (fiscally sponsored by Scribe Video Center, Inc.) provided services and materials for and acted as producer of five (5) multi-media video productions for the Exhibit, as follows: (i) Family Dining Room: Ona Maria Judge Staines-Oney Escapes; (ii) State Dining Room: Escape from Slavery and Rebellion Against it, and St. Domingue; (iii) Steward's Room: The Adams Years; (iv) Servant's Dining Room: Philadelphia & Mount Vernon; (v) Kitchen: Hercules (collectively, the "Multi-Media Works".

      E.  KMI's sub-consultant Lorene Cary created and delivered certain dramatic scripts and related services and materials incorporated into the Multi-Media Works;

      F.  Louis Massiah, Lorene Cary, KMI and Provider entered into transferable copyright assignment agreements with the City whereby each assigned any and all copyrights they own in the Multi-Media Works and Interpretive Works to the City, and granted the City a license to use any trademarks they may hold in the Multi-Media Works and Interpretive Works. Such assignment agreements are attached hereto in Exhibit A (collectively, the "Copyright Assignment Agreements").

1

G. The City wishes to assign to the NPS and NPS wishes to accept and assume each of the Copyright Assignment Agreements, in accordance with the Cooperative Agreement.

## *COVENANTS*

NOW, THEREFORE, in consideration of the mutual promises contained herein, the foregoing recitals A-G, all of which are incorporated by reference herein, and for other good and viable consideration, and intending to be legally bound hereby, the Parties hereto agree as follows:

1. The City hereby assigns and transfers to NPS each of the Copyright Assignment Agreements and all rights, titles and interests of each assignor as set forth therein.

2. NPS assumes and accepts the foregoing assignment and transfer of the Copyright Assignment Agreements.

3. Miscellaneous Provisions

a. *Governing Law; Forum Selection; Consent To Jurisdiction.* This Agreement shall be deemed to have been made in Philadelphia, Pennsylvania. This Agreement and all disputes arising under it shall be governed, construed and decided in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of Pennsylvania law concerning conflicts of laws. The parties agree that any lawsuit, action, claim, or legal proceeding involving, directly or indirectly, any matter arising out of or related to this Agreement, or the relationship created or evidenced thereby, shall be brought exclusively in the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County. It is the express intent of the parties that jurisdiction over any lawsuit, action, claim, or legal proceeding shall lie exclusively in either of these two forums.

b. *Severability.* The provisions of this Agreement shall be severable. If any provision of this Agreement or the application thereof for any reason or circumstances shall to any extent be held to be invalid or unenforceable, the remaining provisions or the application of such provision to persons or entities other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and enforceable to the fullest extent permitted by law.

c. *Notice.* Any notice required or permitted to be given under this Agreement shall be given in writing and shall be personally delivered by hand with receipt obtained, by a national overnight express carrier (such as Federal Express), by facsimile, or sent by registered or certified United States mail, return receipt requested, addressed as follows:

If to NPS:
Superintendent of National Park Services
143 South 3rd Street
Philadelphia, PA 19106

If to City:
Commissioner, Department of Public Property
Room 790
City Hall

2

Philadelphia, PA 19107

With copy to:
City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania, 19102


d.      *Headings*. The headings in this Agreement do not in any way define, limit, describe or amplify the provisions of the Agreement or the scope or intent of the provisions, and are not a part of the Agreement.

e.      *No Third Party Beneficiaries*. Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation, or legal entity, other than the parties and City, any rights, remedies, or other benefits under or by reason of the Agreement.

f.      *Survival*. Any and all provisions set forth in this Agreement which, by its or their nature, would reasonably be expected to be performed after the termination or expiration of the Agreement shall survive and be enforceable after such termination.

g.      *Authority to Execute*. Each of the Parties represents and warrants that it has caused this Agreement to be duly authorized, executed and delivered by and through persons authorized to execute this Agreement on its behalf; and each of the individuals signing below represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of the party for which he or she has executed it.

h.      *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together, shall constitute one and the same instrument.

i.      Entire Agreement. This Agreement, including all exhibits, contains all the terms and conditions agreed upon by the parties, constitute the entire agreement among the parties pertaining to the subject matter hereof, and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties (except to the extent specifically set forth herein).  This Agreement may be modified only by written amendment executed by both parties.

**[Signature Page(s) Follow]**

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the Effective Date.

**THE CITY OF PHILADELPHIA**

Name/Title (print): Bridget Collins-Greenwald

Date: 12-16-15

**THE NATIONAL PARK SERVICE**

Name/Title (print): Cynthia MacLeod    Superintendent
Independence National
Historical Park

Date: JAN 0 6 2016

Approved as to Form:
Shelley R. Smith, City Solicitor
By: James C. Leonard
Title: Chief Deputy City Solicitor

**Exhibit "A"**

**Copyright Assignment Agreements**

### TRANSFER AND ASSIGNMENT OF COPYRIGHTS
### AND LICENSE TO USE TRADEMARKS RELATING TO THE PRESIDENT'S
### HOUSE EXHIBIT AT INDEPENDENCE NATIONAL PARK

This Transfer And Assignment Of Copyrights and License to Use Trademarks Relating To The President's House Exhibit At Independence National Park ("Transfer and Assignment" or "Agreement") is made and is effective as of July 7, 2015 (the "Effective Date") by and among Kelly Maiello Management, LLC, a (Pennsylvania limited liability corporation), Kelly Maiello, Inc., a Pennsylvania corporation, and the City of Philadelphia, a municipal corporation under the laws of Pennsylvania (collectively, the "Parties" and each a "Party").

### RECITALS

A. The City of Philadelphia (the "City") entered into that certain Cooperative Agreement for the President's House Project and Archeological Research Dig, dated September 1, 2006, as amended (the "Cooperative Agreement") with the United States of America, acting through the National Park Service of the United States Department of the Interior ( "NPS") to establish a public exhibit at Independence National Historic Park in Philadelphia relating to the site of the house occupied by former Presidents George Washington and John Adams (the "President's House Exhibit," sometimes referred to herein as the "Exhibit" or the "Project");

B. Kelly/Maiello Management, LLC (the "Provider") entered into that certain Commission Agreement for Design, Fabrication and Installation of Public Exhibit dated October 5, 2007, as amended (the "Commission Agreement") with the City to provide "Services" and "Materials" and "Installation" (all as defined in the Commission Agreement) to establish the President's House Exhibit Provider's performance of the Commission Agreement resulted in the production of Services and Materials for the Exhibit, including, without limitation, the "Interpretive Works," as defined in the Commission Agreement, that were created for the Exhibit (collectively, the "President's House Services and Materials"). The term "President's House Services and Materials " as used in this Agreement includes, without limitation, all copyrightable works created for the President's House Exhibit pursuant to the Commission Agreement, whether or not expressly identified in this Agreement, and includes, without limitation, the items identified in Exhibit A, *Schedule of Interpretive Works*, attached hereto.

C. Provider entered into an agreement (the "KMI Agreement") with Kelly/Maiello, Inc. ("KMI") according to which KMI, through itself and its sub-consultants, agreed to provide certain of the Services and Materials for the President's House Exhibit, with those certain Services and Materials defined collectively as the "KMI Services and Materials;"

D. KMI and Louis Massiah (fiscally sponsored by Scribe Video Center, Inc.) entered into an agreement (the "Louis Massiah Agreement") according to which Louis Massiah agreed to provide certain of Services and Materials for the President's House Exhibit required of KMI under the KMI Agreement. The Services and Materials Louis Massiah provided under the Louis Massiah Agreement (collectively, "Louis Massiah Services and Materials") included, but were not limited to, the production of five (5) multi-media video productions as identified in Exhibit A hereto, *Schedule of Interpretive Works*, under the heading "The President's House – Videos" (collectively referred to herein as the "Multi-Media Works");

1

#1530239v1 3260-04

E. Louis Massiah entered into an agreement with Dwight Andrews, pursuant to which Dwight Andrews agreed to provide certain musical compositions and musical scores and related services and materials to be incorporated into the Multi-Media Works (collectively, the "Dwight Andrews Services and Materials");

F. Provider entered into an agreement with Lorene Cary, pursuant to which Lorene Cary agreed to create and deliver to Provider certain dramatic scripts and related services and materials to be incorporated into the Multi-Media Works (collectively, the "Lorene Cary Services and Materials");

G. Louis Massiah, through his solely-owned corporation Seventh Ward Project, Inc., also entered into an Agreement (the "SAG Agreement") with the Screen Actors Guild – American Federation of Television and Radio Artists ("SAG"), through the paymaster Em Bee Productions/Penny Baker, to secure performances by various actors, including those required for the production of the Multi-Media Works (those performances are hereinafter collectively referred to as the "President's House Performances");

H. Provider entered into agreements (i) with American History Workshop and Eisterhold Associates, Inc. requiring them to furnish services and materials to create and/or modify certain Interpretive Works resulting in the production of those Interpretive Works identified under the headings "Porcelite Panels," "Glass Panels," and "Bronze Casts" in Exhibit A (collectively, the "AHW/Eisterhold Services and Materials"), (ii) with Ife Ni-Owoo requiring her to furnish services and materials to create an Interpretive Work resulting in the production of the Interpretive Work "The Memorial" identified under the heading "Other Interpretive Works" in Exhibit A (the "Ife Ni-Owoo Services and Materials"); (iii) with UJM Architects + Designers requiring it to provide services and/or materials related to design of the Exhibit (the "UJM Services and Materials"), and (iv) with Maglan Studios requiring it to provide services and materials related to sound design for the Exhibit (the "Maglan Services and Materials").

I. Under the Commission Agreement, Provider is obligated, *inter alia*, to obtain and transfer to the City all copyrights in and to all of the "Interpretive Works," as defined in the Commission Agreement, which "Interpretive Works," as finally produced, include, without limitation, all items identified in Exhibit A, *Schedule of Interpretive Works*, as well as all other intellectual property specified in the definition of "Interpretive Works" in the Commission Agreement.

J. The President's House Exhibit was established and installed at the Independence National Historic Park with Services and Materials required in the Commission Agreement, which included, *inter alia*, KMI Services and Materials, Louis Massiah Services and Materials, Dwight Andrews Services and Materials, Lorene Cary Services and Materials, and the Multi-Media Works; however, as of the Effective date, the Interpretive Works and the Project in its entirety have not been accepted by the NPS pending, in part, transfer to the NPS of copyrights in and to the Interpretive Works and the right to use any trademarks and service marks incorporated in the Interpretive Works;

K. The City intends to transfer (the "City Transfer") to the NPS certain rights, titles and interests in the President's House Exhibit, including rights, titles and interests in and to ownership of all copyrights in the Interpretive Works, and the right to use any trademarks and service marks incorporated in the Interpretive Works;

2

#1530239v1 3260-04

L.  The Provider and KMI have assisted the City in obtaining and securing this Agreement to enable the City Transfer;

M.  In order to permit, promote and perfect the City Transfer, the parties hereto have agreed to enter into this Agreement.

### COVENANTS

NOW, THEREFORE, in consideration of the mutual promises contained herein, the foregoing recitals A.-M, all of which are incorporated by reference herein, and for other good and viable consideration and intending to be legally bound hereby, the Parties hereto agree as follows:

1.    Provider, for good and valuable consideration, hereby grants, transfers, conveys and assigns to the City its entire right, title and legal and equitable interest in and to the President's House Services and Materials, including without limitation the Interpretive Works , and  without limitation, all copyrights and other intellectual property rights that it owns in and to the Multi-Media Works, the Louis Massiah Services and Materials, the Dwight Andrews Services and Materials,  the Lorene Cary Services and Materials, the AHW/Eisterhold Services and Materials, the Ife Ni-Owoo Services and Materials, the UJM Services and Materials and/or the Maglan Services and Materials (collectively, the "Provider Copyrights").  This assignment includes assignment of all such rights of Provider under Title 17, Section 106 of the United States Code including the right to reproduce, incorporate, embody, adapt, prepare derivative works, distribute copies to the public by sale or transfer of ownership, or by rental, lease or lending, display publicly, or otherwise use the Provider Copyrights; the right to obtain registrations of copyright for the President's House Services and Materials and the Interpretive Works and any copyright rights in the Louis Massiah, Dwight Andrews, Lorene Cary, AHW/Eisterhold, Ife Ni-Owoo, UJM and/or Maglan Services and Materials that are owned by Provider, in the City's sole name, in the United States and throughout the world; and the right to further grant, transfer and assign such rights, in whole or in part, to NPS or to others.

2.  KMI, for good and valuable consideration, hereby grants, transfers, conveys and assigns to the City its entire right, title and legal and equitable interest in and to the President's House Services and Materials, including without limitation the Interpretive Works and  without limitation, all copyrights rights and other intellectual property rights that it owns in and to the Interpretive Works and/or the Louis Massiah Services and Materials, the Dwight Andrews Services and Materials,  the Lorene Cary Services and Materials, the AHW/Eisterhold Services and Materials, the Ife Ni-Owoo Services and Materials, the UJM Services and Materials and/or the Maglan Services and Materials (collectively, the "KMI Copyrights").  This assignment includes assignment of all such rights of KMI under Title 17, Section 106 of the United States Code including the right to reproduce, incorporate, embody, adapt, prepare derivative works, distribute copies to the public by sale or transfer of ownership, or by rental, lease or lending, display publicly, or otherwise use the KMI Copyrights; the right to obtain registrations of copyright for the Interpretive Works and any copyright rights in the Louis Massiah, Dwight Andrews, and/or Lorene Cary Services and Materials that are owned by KMI, in the City's sole name, in the United States and throughout the world; and the right to further grant, transfer and assign such rights, in whole or in part, to NPS or to others.

3

#1530239v1 3260-04

3. Provider warrants and represents (i) that it owns the Provider Copyrights and holds marketable title to the Provider Copyrights with there being no prior assignments, hypothecations, licenses or other encumbrances of any nature affecting them; (ii) that it has, without restriction and without obtaining the consent of any other party, the right to transfer the Provider Copyrights to the City as stated in this agreement; (iii) that the Provider Copyrights do not infringe the rights of any third parties and that there are not now and never have been any outstanding lawsuits, actions, claims or legal proceedings involving the Provider Copyrights other than claims asserted by the City; (iv) that the five (5) works identified in Exhibit A under the heading "The President's House – Videos" (a) comprise all of the videos produced by Louis Massiah for the Project, and (b) are correctly and uniquely identified, by title, in Exhibit A; (v) that the Interpretive Works identified in Exhibit A under the headings "Porcelite Panels," "Glass Panels," "Other Graphic Type" and "Bronze Casts" (a) comprise all of the Interpretive Works of their respective types (as stated in the applicable heading) that were produced for the Project, and (b) are correctly and uniquely identified, by title, in Exhibit A.

4. KMI warrants and represents (i) that it owns the KMI Copyrights and holds marketable title to the KMI Copyrights with there being no prior assignments, hypothecations, licenses or other encumbrances of any nature affecting them; (ii) that it has, without restriction and without obtaining the consent of any other party, the right to transfer the KMI Copyrights to the City as stated in this agreement; and (iii) that the KMI Copyrights do not infringe the rights of any third parties and that there are not now and never have been any outstanding lawsuits, actions, claims or legal proceedings involving the KMI Copyrights other than claims asserted by the City.

5. Neither KMI nor Provider shall have any responsibility whatsoever for the payment of any performance or other fees that may be required by SAG, acting on its behalf or on behalf of actors performing in the Multi-Media Works or otherwise, as a condition of posting the Multi-Media Works on the Internet or selling DVDs of the Multi-Media Works or any other use of the Multi-Media Works that is not permitted under the SAG Agreement.

6. Each of KMI and Provider (the "Licensors") hereby grants to the City and its assigns a perpetual, non-exclusive, royalty-free license to use any of their trademarks or service marks in connection with the Project and the Multi-Media Works. This license does not give rise to any payment or other obligations on the part of the City or its assigns. The City and its assigns shall have sole discretion in how these marks will be used in connection with the Project and the Multi-Media Works. Each of the Licensors warrants and represents that it has, without restriction and without obtaining the consent of any other party, the right to grant such license to use its trademarks and service marks.

7. The City assumes the assignments of copyrights made by KMI and Provider under this Agreement.

8. Miscellaneous Provisions

   a.    *Governing Law; Forum Selection; Consent To Jurisdiction.* This Agreement shall be deemed to have been made in Philadelphia, Pennsylvania. This Agreement and all disputes arising under it shall be governed, construed and decided in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of Pennsylvania law concerning conflicts of laws. The parties agree that any lawsuit, action, claim, or legal proceeding involving, directly or indirectly, any matter arising out of or related to this Agreement, or the relationship created or evidenced thereby, shall

4

#1530239v1 3260-04

be brought exclusively in the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County. It is the express intent of the parties that jurisdiction over any lawsuit, action, claim, or legal proceeding shall lie exclusively in either of these two forums.

b.     *Severability.* The provisions of this Agreement shall be severable. If any provision of this Agreement or the application thereof for any reason or circumstances shall to any extent be held to be invalid or unenforceable, the remaining provisions or the application of such provision to persons or entities other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and enforceable to the fullest extent permitted by law.

c.     *Notice.* Any notice required or permitted to be given under this Agreement shall be given in writing and shall be personally delivered by hand with receipt obtained, by a national overnight express carrier (such as Federal Express), by facsimile, or sent by registered or certified United States mail, return receipt requested, addressed as follows:

If to City:
Commissioner, Department of Public Property
Room 790
City Hall
Philadelphia, PA 19107

With copy to:
City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania, 19102

If to Provider:

**Kelly/Maiello Management LLC**
1420 Walnut Street, 15th floor
Philadelphia PA 19102

If to KMI:

**Kelly/Maiello Inc.**
*Architects & Planners*
1420 Walnut Street, 15th floor
Philadelphia PA 19102

d.     *Headings.* The headings in this Agreement do not in any way define, limit, describe or amplify the provisions of the Agreement or the scope or intent of the provisions, and are not a part of the Agreement.

5

#1530239v1 3260-04

e.    *No Third Party Beneficiaries.* Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation, or legal entity, other than the parties and City, any rights, remedies, or other benefits under or by reason of the Agreement.

f.    *Survival.* Any and all provisions set forth in this Agreement which, by its or their nature, would reasonably be expected to be performed after the termination or expiration of the Agreement shall survive and be enforceable after such termination.

g.    *Amendments; Waiver.* This Agreement may not be changed, amended, augmented, rescinded, or discharged (other than by performance), in whole or in part, except by a written amendment signed by the City. Except to the extent that City may otherwise agree in writing, no waiver of any provision of the Agreement shall be deemed: (a) to be a waiver of any other provision in the Agreement; or (b) to be a waiver of any breach of the obligations under the Agreement. Any forbearance by a party in seeking a remedy for any noncompliance or breach by the other party shall not be deemed to be a waiver of rights and remedies with respect to such noncompliance or breach.

h.    *Authority to Execute.* Each of the Parties represents and warrants that it has caused this Agreement to be duly authorized, executed and delivered by and through persons authorized to execute this Agreement on its behalf; and each of the individuals signing below represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of the party for which he or she has executed it.

i.    *Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together, shall constitute one and the same instrument.

j.    Entire Agreement. This Agreement, including all Exhibits, contains all the terms and conditions agreed upon by the parties, constitute the entire agreement among the parties pertaining to the subject matter hereof, and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties (except to the extent specifically set forth herein). No other prior or contemporaneous agreements, covenants, representations or warranties, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind any party or to vary any of the terms contained in this Agreement.

**[Signature Page(s) Follow]**

6

#1530239v1 3260-04

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.


**KELLY MAIELLO MANAGEMENT, LLC**

Name/Title (print): _____

Date: _____


**KELLY MAIELLO, INC.**

Name/Title (print): _____

Date: _____


**THE CITY OF PHILADELPHIA**

Name/Title (print): _____

Date: _____


Approved as to Form:
Shelley R. Smith, City Solicitor
By: _____
Title: _____

**IN WITNESS WHEREOF,** the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.

**KELLY MAIELLO MANAGEMENT, LLC**

_____

Name/Title (print): _____

Date: _____

**KELLY MAIELLO, INC.**

_____

Name/Title (print): _____

Date: _____

**THE CITY OF PHILADELPHIA**

_____

Name/Title (print): ___Bridget Collins-Greenwald___
                                    Commissioner
Date: _11-6-15___    Department of Public Property
                                 City of Philadelphia

Approved as to Form:
Shelley R. Smith, City Solicitor
By: _____
Title: _____

**EXHIBIT A**
**SCHEDULE OF INTERPRETIVE WORKS**

<u>Porcelite Panels</u>
Gl.01 The Executive Branch
Gl.02 The House & the People Who Worked & Live In It
G 1.03 The Dirty Business of Slavery
Gl.04 Life Under Slavery
G 1.05 History Lost and Found - Reader Rail North - Archeology
Gl.06 History Lost and Found-Reader Rail South-Exposed/ Contradictions/ Discoveries
G 1.07 History Lost and Found - Reader Rail East - Making History/ Digging for History/ Conflict & Collaboration
Gl.08 Video 1 Label Panel- Oney Escapes
G 1.09 Video 2 Label Panel - Contagion and Liberty:
The Yellow Fever Epidemic and the Revolution in Saint Domingue
Gl.10 Video 3 Label Panel- Washington's Death and a Renewed Hope For Freedom
G 1.11 Video 4 Label Panel - Chef Hercules
G 1.12 Video 5 Label Panel - Mount Vernon to Philadelphia:
A Path to Freedom - For Some

<u>Glass Panels</u>
G2.01 Franklin Funeral- Promoting the Abolition of Slavery
G2.02 Burn this Treaty to Hell
G2.03 Thirst for Adam's Blood- "We shall come to a civil war"
G2.04 Fugitive Slave Law - "An Act respecting fugitives from Justice"
G2.05 Adams/ Sedition - Suppressing the Opposition
G2.06 Washington/ Fraunces-The Keeper of the House
G2.07 Upstairs - "I will fear no Evil"
G2.08 Oney Bids Adieu: "I am free now"
G2.09 Refugees from Haiti-The opener of the Way
G2.10 An Independent African Church - A Day of Reciprocity
G2.11 Fleeing the Fever - Refuge in the country
G2.12 Death Carts
G2.13 Threat of Kidnapping - " .. .is hereby empowered to Sieze such Fugitives"
G2. 1 4 Richmond Leaving -"Freedom might be too great a temptation"
G2.15 Adams/ Bunel: Strengthening Ties with the United States
G2.16 Washington/ Native Americans: Awarding a Peace Medal
G2.17 Washing Arriving: "I and my household"

<u>Other Graphic Type</u>
G3.01 The Memorial

<u>Bronze Casts</u>
G4.01 Bronze Footprint (Bronze Shoe Prints)

Exhibit A - Page 1 of 2

<u>The President's House - Videos</u>
1. Family Dining Room: Ona Maria Judge Staines -Oney Escapes
2. State Dining Room: Escape from Slavery and Rebellion Against it, and St. Domingue
3. Steward's Room: The Adams Years
4. Servant's Dining Room: Philadelphia & Mount Vernon
5. Kitchen: Hercules

Exhibit A - Page 2 of 2

## *TRANSFER AND ASSIGNMENT OF COPYRIGHTS*
## *AND LICENSE TO USE TRADEMARKS RELATING TO THE PRESIDENT'S*
## *HOUSE EXHIBIT AT INDEPENDENCE NATIONAL PARK*

This Transfer And Assignment Of Copyrights and License to Use Trademarks Relating To The President's House Exhibit At Independence National Park ("Transfer and Assignment" or "Agreement") is made and is effective as of July 7, 2015 (the "Effective Date") by and between the natural person Louis Massiah and the City of Philadelphia, a municipal corporation under the laws of Pennsylvania (collectively, the "Parties" and each a "Party").

## *RECITALS*

A.  The City of Philadelphia (the "City") entered into that certain Cooperative Agreement for the President's House Project and Archeological Research Dig, dated September 1, 2006, as amended (the "Cooperative Agreement") with the United States of America, acting through the National Park Service of the United States Department of the Interior ( "NPS") to establish a public exhibit at Independence National Historic Park in Philadelphia relating to the site of the house occupied by former Presidents George Washington and John Adams (the "President's House Exhibit," sometimes referred to herein as the "Project");

B.  Kelly/Maiello Management, LLC (the "Provider") entered into that certain Commission Agreement for Design, Fabrication and Installation of Public Exhibit dated October 5, 2007, as amended (the "Commission Agreement") with the City to provide "Services" , "Materials" and "Installation" (all as defined in the Commission Agreement) to establish the President's House Exhibit; provided, that the terms "Services" and "Materials" together include all copyrightable works created for the President's House Exhibit pursuant to the Commission Agreement, whether or not expressly identified in this Agreement);

C.  Provider entered into an agreement (the "KMI Agreement") with Kelly/Maiello, Inc. ("KMI") according to which KMI, through itself and its sub-consultants, agreed to provide certain of the Services and Materials for the President's House Exhibit, with those certain Services and Materials defined collectively in the KMI Agreement as "KMI Services and Materials;"

D.  KMI and Louis Massiah (fiscally sponsored by Scribe Video Center, Inc.) entered into an agreement (the "Louis Massiah Agreement") according to which Louis Massiah agreed to provide certain Services and Materials required of KMI under the KMI Agreement.

E.  The Services and Materials Louis Massiah provided under the Louis Massiah Agreement (collectively, the "Louis Massiah Services and Materials") included, but were not limited to, the production of five (5) multi-media video productions, as identified in Exhibit A hereto, titled "Schedule of Multi-Media Works," under the heading "The President's House – Videos" (collectively, the "Multi-Media Works");

F.  Louis Massiah entered into that certain agreement with Dwight Andrews, pursuant to which Dwight Andrews agreed to provide certain musical compositions and musical scores and related

1

services and materials to be incorporated into the Multi-Media Works (such musical compositions and musical scores and all other services and materials Dwight Andrews agreed to provide under such Agreement, are hereinafter referred to collectively as the "Dwight Andrews Services and Materials";

G.  Louis Massiah, through his solely-owned corporation Seventh Ward Project, Inc., also entered into that certain agreement (the "SAG Agreement") with the Screen Actors Guild – American Federation of Television and Radio Artists ("SAG"), through the paymaster Em Bee Productions/Penny Baker, to secure performances by various actors, including those required for the production of the Multi-Media Works (those performances are hereinafter collectively referred to as the "President's House Performances");

H.  The City intends to transfer (the "City Transfer") to the NPS certain rights, titles and interests in the President's House Exhibit, including rights, titles and interests in and to ownership of all copyrights in the Interpretive Works, and the right to use any trademarks and service marks incorporated in the Louis Massiah Services and Materials.


## *COVENANTS*

NOW, THEREFORE, in consideration of the mutual promises contained herein, the foregoing recitals A.-H, all of which are incorporated by reference herein, and for other good and viable consideration and intending to be legally bound hereby, the Parties hereto agree as follows:

1.  Louis Massiah, for good and valuable consideration, hereby grants, transfers, conveys and assigns to the City his entire right, title and legal and equitable interest in and to the Multi-Media Works, including, without limitation, all copyrights in and to the Multi-Media Works -, every component of the Multi-Media Works not in the public domain, and all other copyrightable works, individually or collectively, created by Louis Massiah as part of the Louis Massiah Services and Materials, and including any copyrights that Louis Massiah may own in the Dwight Andrews Services and Materials (collectively, the "Louis Massiah Copyrights"). This assignment includes assignment of all such rights of Louis Massiah under Title 17 Section 106 of the United States Code, including without limitation the right to modify, reproduce, incorporate, embody, adapt, prepare derivative works from, distribute copies to the public by sale or transfer of ownership, or by rental, lease or lending, display publicly, or otherwise to use the Louis Massiah Copyrights; the right to obtain registrations of copyright for the Multi-Media Works and other Louis Massiah Services and Materials in the City's sole name, in the United States and throughout the world; and the right to further grant, transfer and assign such rights, in whole or in part, to NPS or to others.

2.  Louis Massiah warrants and represents (i) that he owns the Louis Massiah Copyrights and holds marketable title to the Louis Massiah Copyrights with there being no prior assignments, hypothecations, licenses or other encumbrances of any nature affecting them; (ii) that he has, without restriction and without obtaining the consent of any other party, the right to transfer Louis Massiah Copyrights to the City as provided in this agreement; and (iii) that the Louis Massiah Copyrights do not infringe the rights of any third parties and that there are not now and never have been any outstanding lawsuits, actions, claims or legal proceedings involving the Louis Massiah Copyrights, other than claims asserted by the City; and (iv) that the five (5) works identified in Exhibit A under the heading "The President's House –

2

Videos" (a) comprise all of the videos produced by Louis Massiah for the Project, and (b) are correctly and uniquely identified, by title, in Exhibit A.

3.  No part of this agreement shall preclude Louis Massiah from presenting his copyrightable services and materials incorporated in the Project as part of his work portfolio or in non-commercial exhibitions or presentations.

4.  Louis Massiah shall have no responsibility whatsoever for the payment of any performance or other fees that may be required by SAG, acting on its behalf or on behalf of actors performing in the Multi-Media Works or otherwise, as a condition of posting the Multi-Media Works on the Internet or selling DVDs of the Multi-Media Works or any other use of the Multi-Media Works that is not permitted under the SAG Agreement; provided, however, that nothing in this Section 4 is intended to excuse Louis Massiah from responsibility for any fees that may be due or owing to SAG for the uses permitted under the SAG Agreement, which fees were Louis Massiah's responsibility under the ~~Louis~~ SAG ~~Massiah~~ Agreement, or to make the City responsible for such fees.





5.  Louis Massiah hereby grants to the City and its assigns a perpetual, non-exclusive, royalty-free license to use his trademarks or service marks in connection with the Project and the Multi-Media Works. This license does not give rise to any payment or other obligations on the part of the City or its assigns. The City and its assigns shall have sole discretion in how these marks will be used in connection with the Project and the Multi-Media Works.  Louis Massiah warrants and represents that he has, without restriction and without obtaining the consent of any other party, the right to grant such license to use his trademarks and service marks.

6.  The City assumes the assignment of copyrights made by Louis Massiah under Section 1 of this Agreement.

7.  Miscellaneous Provisions

a.    *Governing Law; Forum Selection; Consent To Jurisdiction*. This Agreement and all disputes arising under it shall be governed, construed and decided in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of Pennsylvania law concerning conflicts of laws. The parties agree that any lawsuit, action, claim, or legal proceeding arising out of this Agreement shall be brought exclusively in the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County.

b.    *Severability*. The provisions of this Agreement shall be severable. If any provision of this Agreement or the application thereof for any reason or circumstances shall to any extent be held to be invalid or unenforceable, the remaining provisions or the application of such provision to persons or entities other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and enforceable to the fullest extent permitted by law.

c.    *Notice*. Any notice required or permitted to be given under this Agreement shall be given in writing and shall be personally delivered by hand with receipt obtained, by a national overnight express carrier (such as Federal Express), by facsimile, or sent by registered or certified United States mail, return receipt requested, addressed as follows:

3

If to City:
Commissioner
Department of Public Property
790 City Hall
Philadelphia, PA 19107

With copy to:
City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania, 19102

If to Louis Massiah: [INSERT CONTACT INFORMATION]

Scribe Video
4213 Chestnut Street, 3rd Floor
Philadelphia 19104

    d.    *Headings.* The headings in this Agreement do not in any way define, limit, describe or amplify the provisions of the Agreement or the scope or intent of the provisions, and are not a part of the Agreement.

    e.    *No Third Party Beneficiaries.* Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation, or legal entity, other than the parties and City, any rights, remedies, or other benefits under or by reason of the Agreement.

    f.    *Survival.* Any and all provisions set forth in this Agreement which, by its or their nature, would reasonably be expected to be performed after the termination or expiration of the Agreement shall survive and be enforceable after such termination.

    g.    *Amendments; Waiver.* This Agreement may not be changed, amended, augmented, rescinded, or discharged (other than by performance), in whole or in part, except by a written amendment signed by the City. Except to the extent that City may otherwise agree in writing, no waiver of any provision of the Agreement shall be deemed: (a) to be a waiver of any other provision in the Agreement; or (b) to be a waiver of any breach of the obligations under the Agreement. Any forbearance by a party in seeking a remedy for any noncompliance or breach by the other party shall not be deemed to be a waiver of rights and remedies with respect to such noncompliance or breach.

    h.    *Authority to Execute.* Each of the Parties represents and warrants that it has caused this Agreement to be duly authorized, executed and delivered by and through persons authorized to execute this Agreement on its behalf; and each of the individuals signing below represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of the party for which he or she has executed it.

4

LTM
14 oct 2015

i.    *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together, shall constitute one and the same instrument.

j.    *Entire Agreement*. This Agreement, including all Exhibits, contains all the terms and conditions agreed upon by the parties, constitute the entire agreement among the parties pertaining to the subject matter hereof, and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties (except to the extent specifically set forth herein). No other prior or contemporaneous agreements, covenants, representations or warranties, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind any party or to vary any of the terms contained in this Agreement.

**[Signature Page(s) Follow]**

5

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.

**LOUIS MASSIAH**

Name/Title (print): _Louis J MASSIAH_

Date: _14 October 2015_

**THE CITY OF PHILADELPHIA**

Name/Title (print): _____

Date: _____

Approved as to Form:
Shelley R. Smith, City Solicitor
By: _____
Title: _____

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.

**LOUIS MASSIAH**

_____

Name/Title (print): _____

Date: _____

**THE CITY OF PHILADELPHIA**

_____

Name/Title (print): _____ Bridget Collins-Greenwald

Date: _1-6-15_      Commissioner

Department of Public Property

City of Philadelphia

Approved as to Form:

Shelley R. Smith, City Solicitor

By: _____

Title: _____

## EXHIBIT A

## SCHEDULE OF MULTI-MEDIA WORKS

1. Family Dining Room: Ona Maria Judge Staines -Oney Escapes

2. State Dining Room: Escape from Slavery and Rebellion Against it, and St. Domingue

3. Steward's Room: The Adams Years

4. Servant's Dining Room: Philadelphia & Mount Vernon

5. Kitchen: Hercules

***TRANSFER AND ASSIGNMENT OF COPYRIGHTS
AND LICENSE TO USE TRADEMARKS RELATING TO THE PRESIDENT'S
HOUSE EXHIBIT AT INDEPENDENCE NATIONAL PARK***

This Transfer And Assignment Of Copyrights and License to Use Trademarks Relating To The President's House Exhibit At Independence National Park ("Transfer and Assignment" or "Agreement") is made and is effective as of July 7, 2015 (the "Effective Date") by and between the natural person Lorene Cary and the City of Philadelphia, a municipal corporation under the laws of Pennsylvania (collectively, the "Parties" and each a "Party").

## *RECITALS*

A.  The City of Philadelphia (the "City") entered into that certain Cooperative Agreement for the President's House Project and Archeological Research Dig, dated September 1, 2006, as amended (the "Cooperative Agreement") with the United States of America, acting through the National Park Service of the United States Department of the Interior ( "NPS") to establish a public exhibit at Independence National Historic Park in Philadelphia relating to the site of the house occupied by former Presidents George Washington and John Adams (the "President's House Exhibit," sometimes referred to herein as the "Project");

B.  Kelly/Maiello Management, LLC (the "Provider") entered into that certain Commission Agreement for Design, Fabrication and Installation of Public Exhibit dated October 5, 2007 as amended (the "Commission Agreement") with the City to provide "Services", "Materials" and "Installation" (all as defined in the Commission Agreement) to establish the President's House Exhibit; provided, that the terms "Services" and "Materials" together include all copyrightable works created for the President's House Exhibit pursuant to the Commission Agreement, whether or not expressly identified in this Agreement;

C.  Provider entered into that certain agreement (the "KMI Agreement") with Kelly/Maiello, Inc. ("KMI") according to which KMI, through itself and its sub-consultants, agreed to provide certain of the Services and Materials for the President's House Exhibit, with those certain Services and Materials defined collectively in the KMI Agreement as "KMI Services and Materials;"

D.  KMI and Louis Massiah (fiscally sponsored by Scribe Video Center, Inc.) entered into an agreement (the "Louis Massiah Agreement") according to which Louis Massiah agreed to provide certain of the Services and Materials required of KMI under the Commission Agreement;

E.  The Services and Materials Louis Massiah provided under the Louis Massiah Agreement (collectively, the "Louis Massiah Services and Materials") included, but were not limited to, the production of five (5) multi-media video productions, as identified in Exhibit A hereto, titled "Schedule of Multi-Media Works," under the heading "The President's House – Videos" (collectively, the "Multi-Media Works");

1

F.  Provider entered into that certain agreement with Lorene Cary, pursuant to which Lorene Cary agreed to create and deliver to Provider certain dramatic scripts and related services and materials to be incorporated into the Multi-Media Works (such dramatic scripts and all other services and materials Lorene Cary agreed to provide under such Agreement are hereinafter referred to collectively as the "Lorene Cary Services and Materials";

G.  Louis Massiah, through his solely-owned corporation Seventh Ward Project, Inc., also entered into that certain agreement (the "SAG Agreement") with the Screen Actors Guild – American Federation of Television and Radio Artists ("SAG"), through the paymaster Em Bee Productions/Penny Baker, to secure performances by various actors, including those required for the production of the Multi-Media Works (those performances are hereinafter collectively referred to as the "President's House Performances");

H.  The City intends to transfer (the "City Transfer") to the NPS certain rights, titles and interests in the President's House Exhibit, including rights, titles and interests in and to ownership of all copyrights in the Interpretive Works, and the right to use any trademarks and service marks incorporated in the Lorene Cary Services and Materials.

## *COVENANTS*

NOW, THEREFORE, in consideration of the mutual promises contained herein, the foregoing recitals A.-H, all of which are incorporated by reference herein, and for other good and viable consideration and intending to be legally bound hereby, the Parties hereto agree as follows:

1.  Lorene Cary, for good and valuable consideration, hereby grants, transfers, conveys and assigns to the City her entire right, title and legal and equitable interest in and to the Multi-Media Works, including, without limitation, all of her copyrights in and to the dramatic scripts incorporated in the Multi-Media Works and all other copyrightable works, individually or collectively, created by Lorene Cary as part of the Lorene Cary Services and Materials (collectively, the "Lorene Cary Copyrights"). This assignment includes assignment of all such rights of Lorene Cary under Title 17, Section 106 of the United States Code including the right to reproduce, incorporate, embody, adapt, prepare derivative works, distribute copies to the public by sale or transfer of ownership, or by rental, lease or lending, display publicly, or otherwise use the Lorene Cary Copyrights; the right to obtain registrations of copyright for the Multi-Media Works and other Lorene Cary Services and Materials in the City's sole name, in the United States and throughout the world; and the right to further grant, transfer and assign such rights, in whole or in part, to NPS or to others.

2.  Lorene Cary warrants and represents (i) that she owns the Lorene Cary Copyrights and holds marketable title to the Lorene Cary Copyrights with there being no prior assignments, hypothecations, licenses or other encumbrances of any nature affecting them; (ii) that he has, without restriction and without obtaining the consent of any other party, the right to transfer the Lorene Cary Copyrights to the City as provided in this agreement; and (iii) that the Lorene Cary Copyrights do not infringe the rights of any third parties and that there are not now and never have been any outstanding lawsuits, actions, claims or legal proceedings involving the Lorene Cary Copyrights other than claims asserted by the City.

2

3. No part of this agreement shall preclude Lorene Cary from presenting her copyrightable services and materials incorporated in the Project as part of their work portfolio or in non-commercial exhibitions or presentations.

4. Lorene Cary shall have no responsibility whatsoever for the payment of any performance or other fees that may be required by SAG, acting on its behalf or on behalf of actors performing in the Multi-Media Works or otherwise, as a condition of posting the Multi-Media Works on the Internet or selling DVDs of the Multi-Media Works or any other use of the Multi-Media Works that is not permitted under the SAG Agreement.

5. Lorene Cary ( hereby grants to the City and its assigns a perpetual, non-exclusive, royalty-free license to use any of their trademarks or service marks in connection with the Project and the Multi-Media Works. This license does not give rise to any payment or other obligations on the part of the City or its assigns. The City and its assigns shall have sole discretion in how these marks will be used in connection with the Project and the Multi-Media Works. Lorene Cary warrants and represents that she has, without restriction and without obtaining the consent of any other party, the right to grant such license to use its trademarks and service marks.

6. The City assumes the assignment of copyrights made by Lorene Cary under this Agreement.

7. Miscellaneous Provisions

a. *Governing Law; Forum Selection; Consent To Jurisdiction.* This Agreement and all disputes arising under it shall be governed, construed and decided in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of Pennsylvania law concerning conflicts of laws. The parties agree that any lawsuit, action, claim, or legal proceeding arising out of this Agreement shall be brought exclusively in the United States District Court for the Eastern District of Pennsylvania or the Court of Common Pleas of Philadelphia County.

b. *Severability.* The provisions of this Agreement shall be severable. If any provision of this Agreement or the application thereof for any reason or circumstances shall to any extent be held to be invalid or unenforceable, the remaining provisions or the application of such provision to persons or entities other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision shall be valid and enforceable to the fullest extent permitted by law.

c. *Notice.* Any notice required or permitted to be given under this Agreement shall be given in writing and shall be personally delivered by hand with receipt obtained, by a national overnight express carrier (such as Federal Express), by facsimile, or sent by registered or certified United States mail, return receipt requested, addressed as follows:

If to City:
Commissioner
Department of Public Property
790 City Hall
Philadelphia, PA 19107

3

With copy to:
City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania, 19102

If to Lorene Cary: 2033 Bainbridge Street,
                   Philadelphia, PA 19146

     d.     *Headings.* The headings in this Agreement do not in any way define, limit, describe or amplify the provisions of the Agreement or the scope or intent of the provisions, and are not a part of the Agreement.

     e.     *No Third Party Beneficiaries.* Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon or give to any person, firm, corporation, or legal entity, other than the parties and City, any rights, remedies, or other benefits under or by reason of the Agreement.

     f.     *Survival.* Any and all provisions set forth in this Agreement which, by its or their nature, would reasonably be expected to be performed after the termination or expiration of the Agreement shall survive and be enforceable after such termination.

     g.     *Amendments; Waiver.* This Agreement may not be changed, amended, augmented, rescinded, or discharged (other than by performance), in whole or in part, except by a written amendment signed by the City. Except to the extent that City may otherwise agree in writing, no waiver of any provision of the Agreement shall be deemed: (a) to be a waiver of any other provision in the Agreement; or (b) to be a waiver of any breach of the obligations under the Agreement. Any forbearance by a party in seeking a remedy for any noncompliance or breach by the other party shall not be deemed to be a waiver of rights and remedies with respect to such noncompliance or breach.

     h.     *Authority to Execute.* Each of the Parties represents and warrants that it has caused this Agreement to be duly authorized, executed and delivered by and through persons authorized to execute this Agreement on its behalf; and each of the individuals signing below represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of the party for which he or she has executed it.

     i.     *Counterparts.* This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together, shall constitute one and the same instrument.

     j.     *Entire Agreement.* This Agreement, including all Exhibits, contains all the terms and conditions agreed upon by the parties, constitute the entire agreement among the parties pertaining to the subject matter hereof, and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties (except to the extent specifically set forth herein). No other prior or contemporaneous agreements, covenants, representations or warranties, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind any party or to vary any of the terms contained in this Agreement.

4

the subject matter of this Agreement shall be deemed to exist or to bind any party or to vary any of the terms contained in this Agreement.

**[Signature Page(s) Follow]**

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.

**LORENE CARY**

Name/Title (print): _Lorene Cary_

Date: _22 September 2015_

**THE CITY OF PHILADELPHIA**

Name/Title (print): _____

Date: _____

Approved as to Form:
Shelley R. Smith, City Solicitor
By: _____
Title: _____

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed this Agreement as of the day first written above.


**LORENE CARY**

_____

Name/Title (print): _____

Date: _____


**THE CITY OF PHILADELPHIA**

_____

Name/Title (print): Bridget Collins-Greenwald
Commissioner
Date: _____ Department of Public Property
City of Philadelphia


Approved as to Form:
Shelley R. Smith, City Solicitor
By: _____
Title: _____

## EXHIBIT A

### SCHEDULE OF MULTI-MEDIA WORKS

1. Family Dining Room: Ona Maria Judge Staines -Oney Escapes

2. State Dining Room: Escape from Slavery and Rebellion Against it, and St. Domingue

3. Steward's Room: The Adams Years

4. Servant's Dining Room: Philadelphia & Mount Vernon

5. Kitchen: Hercules