UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CITY OF PHILADELPHIA,**<br><br>        **Plaintiff,**<br><br>   v.<br><br>**DOUG BURGUM, SECRETARY OF THE INTERIOR, et al.,**<br><br>        **Defendants.** | Civil Action No. 2:26-cv-434 |

**PLAINTIFF THE CITY OF PHILADELPHIA'S RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY AND A STAY PENDING APPEAL**

Plaintiff the City of Philadelphia (the "City" or "Philadelphia"), by and through its undersigned counsel, hereby files this Response in Opposition to Defendants' Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal (Doc. No. 65).

I. **INTRODUCTION**

This case arises from the National Park Service's ("NPS") abrupt and unlawful removal of educational slavery exhibits integral to the collaboratively developed President's House site, located at Independence National Historical Park in Philadelphia. That removal was done without the statutorily mandated mutual agreement of the City. The City filed its initial complaint and application for injunctive relief within hours of the stripping of virtually all of the slavery materials from the site. The City presented evidence to substantiate its right to relief in a day-long preliminary injunction hearing, after which the City filed an amended complaint and petition for relief. At the hearing and in its opposition materials, Defendants chose not to present any evidence beyond a declaration regarding the storage of the removal material. The Court

thereafter issued an Opinion and Order, finding that the City had a likelihood of success on the merits of its claims, that the City sustained irreparable harm in the absence of an injunction requiring that the site be returned to its status as of January 21, 2026, and that both the balance of harms and public interest favored granting relief.  Timing was essential to that decision, as the City asserted harms including the "loss of access to historical truth, an undermining of the public trust, and an inability to recount [the City's] own story in preparation for the semiquincentennial."  (Memorandum Opinion (Feb. 16, 2026) ("Mem. Op.") (Doc. No. 53) at 35-36.)

Defendants have filed an appeal, and now seek entry of a stay of enforcement of the injunction.  For the reasons that follow, and for the same reasons that support the entry of the injunction at issue in the instant application before the Court, Defendants cannot meet their burden for entry of a stay.  As such, the President's House must be restored consistent with the Court's injunction, and the Court should deny Defendants' efforts to avoid this obligation.

## II.    BACKGROUND

As the Court is familiar with the proceedings giving rise to this action, the City summarizes only the history and facts that are relevant to the consideration of the Motion.

On January 22, 2026, Defendants abruptly dismantled nearly all the display panels from and ceased videos playing at the President's House, a building and exhibit on the grounds of Independence National Historical Park.  The removed materials were part of a permanent outdoor fixture that "examine[d] the paradox between slavery and freedom in the founding of the nation."  (*See* Independence National Historical Park, Visiting the President's House Site, https://www.nps.gov/inde/learn/historyculture/places-presidentshousesite.htm (*last accessed* Feb. 19, 2026).)  Since the opening of President's House in 2010, the removed materials collectively

educated the public about the history of the site, including the nine persons enslaved by the Washington family while he resided at the executive mansion located on those grounds.

That same day, the City commenced this action. In its initial Complaint and Motion for Preliminary Injunction, the City sought to enjoin Defendants from taking any action to damage any exhibits, panels, artwork, or other items from the President's House and to restore the site to its original status before the unlawful removal. (*See generally* Doc. Nos. 1, 2.) Following those filings, a number of entities have submitted amicus briefs in support of the City's position, including Pennsylvania Governor Josh Shapiro, Avenging the Ancestors Coalition and Black Journey, the Pennsylvania Senate Democratic Caucus, and the four counties surrounding Philadelphia. (*See* Doc. Nos. 23, 25, 34, 67.)

On January 30, 2026, this Court held a hearing on the preliminary injunction at which the parties and amici Avenging the Ancestors Coalition and the Black Journey argued. (*See* Prelim. Inj. Hr'g Tr. (Doc. No. 60).) The City presented evidence in the form of documents to which Defendants' counsel had stipulated as authentic and testimony from three witnesses, Joyce Wilkerson, Everett Gillison, and Valerie Gay. (*Id.* at 7:17-8:12, 32:16-109:17.) Defendants did not present evidence. (*See* Mem. Op. at 2.) Pursuant to the discussion among the parties and the Court at the hearing, and the Court's subsequent order, the City filed an Amended Complaint and Amended Motion for Preliminary Injunction on February 6, 2026. (Doc. Nos. 44, 45.) Defendants filed a response in opposition to that motion on February 13, 2026. (Doc. No. 52.) This Court issued its Order and Memorandum Opinion ("Opinion") granting the Motion on February 16, 2026, requiring Defendants to "restore the President's House Site to its physical status as of January 21, 2026." (*See* Mem. Op. and Order (Feb. 16, 2026) (Doc. No. 54).) Defendants filed an appeal to the Court of Appeals for the Third Circuit on February 17, 2026.

(Doc. No. 58.) Now, Defendants seek a stay of the Court's Order requiring them to restore President's House to its status before their unlawful action. (Doc. No. 65.)

As the Court found in its Opinion, the City and NPS worked collaboratively to design and complete President's House, agreeing that the site would "focus on the house and the people who lived and worked there . . . the systems and methods of slavery African-American Philadelphia, and the move to freedom for the enslaved." (Mem. Op. at 16.) And each day that "President's House lacks interpretive material to express the City's intention to invest years of time, millions of dollars, and countless individual and collective efforts," the City suffers harm. (*Id.* at 37-38.)

### III. LEGAL STANDARD

When a party has appealed the grant of an injunction, the decision of whether to suspend the injunction pending appeal is committed to the discretion of the district court. Fed. R. Civ. P. 62(c).; *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926) ("A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion."). This is an "extraordinary remedy" that is "rarely granted." *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13–1144, 2013 WL 1277419, at *1 (3d Cir. Feb 8, 2013). In so determining, the court must consider essentially the same factors that governed the analysis for granting the injunction in the first place: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). A party seeking a stay of a preliminary injunction must show a "reasonable chance, or probability, of winning," and that irreparable harm is "more apt to occur than not." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir.

2015).  "The bar is particularly high where . . . the movant is seeking immediate relief from a preliminary injunction granted after an evidentiary hearing, since the movant is effectively asking the court to negate the preliminary injunction that it just granted." *Victoria v. Berks Cnty.*, 2019 WL 2368579 (E.D. Pa. June 3, 2019).  Defendants fall far short of this well-established standard.

## IV.    ARGUMENT

Defendants' Motion adds nothing new to this Court's thorough and cogent prior analysis but instead merely rehashes arguments that the Court already has rejected. As a result, Defendants cannot satisfy any of the factors entitling them to a stay of the preliminary injunction. These fatal deficiencies are discussed in turn.

First, the Court fulsomely addressed the likelihood of success on the merits prong in depth in its Opinion and correctly determined that the City was likely to succeed on the merits of its claims.  (*See* Mem. Op. at 25-35.)  Defendants merely reiterate and reincorporate their prior position, opening their argument on this prong with "as detailed in its opposition to the City's motion for a preliminary injunction (ECF No. 52)." (*See* Mot. Stay at 3.)  As there is nothing new set forth in the Motion, this Court should again find that the City has a likelihood of success on the merits and that this factor weighs against granting a stay for the same reasons the Court set forth in its Opinion.  *See Friends of Animals v. Caldwell*, No. 2:09–cv–5349, 2010 WL 4723393 at *3 (E.D. Pa. Nov. 22, 2010) (relying on *Sanofi–Aventis U.S. LLC v. Sandoz, Inc.*, No. 07–2762, 2009 WL 1968900, at * 2 (D.N.J. July 1, 2009) (finding that there was not a likelihood of success of the merits when the arguments in support of a motion for an injunction (or stay) pending appeal were exactly the same arguments rejected by the court at summary judgment)). As the Court held, Defendants' "[u]nilateral action" to remove the exhibit panels and videos

"flouts Congressional directives, cooperative agreements with the City, and decades of multilateral collaboration irrevocably degrades the public's trust in the government." (Mem. Op. at 37.) "If the President's House is left dismembered throughout this dispute, so too is the history it recounts, and the City's relationship to that history." (Mem. Op. at 38.)

Second, and similarly, any harm now advanced by Defendants has already been considered and rejected by this Court.  In their Motion, Defendants raise just two purported types of harm they now characterize as irreparable—that the Court's interpretation of 16 U.S.C. § 407n would vastly expand the City's authority within Independence National Historical Park and that the injunction compels the Federal government to speak a message that it does not wish to convey. (Mot. Stay at 3-4.) Neither of these contentions has merit. The City's rights, and Defendants' corresponding obligations, are well grounded in both the statutory scheme and decades of contractual agreements relating to Independence National Historical Park. And, as was recognized by this Court, "restoration of the President's House does not infringe upon the government's free speech" and "[t]he government can convey a different message without restraint elsewhere if it so pleases." (Mem. Op. at 39.) Any alleged injury is further undermined by the fact that these grounds at Independence Historical National Park stood for 15 years without alteration, conveying the "whole, complicated truth." (*Id.* at 37.) This is a historical truth for which NPS advocated, that NPS cultivated, and that NPS agreed to uphold. (*See* Mem. Op. at 43 (finding that the parties agreed that the "interpretation of the site" upon the completion of the project "will focus on the house and the people who lived and worked there, the Executive Branch of the U.S. Government, the systems and methods of slavery, African-American Philadelphia, and the move to freedom for the enslaved.") (citing Third Amendment to 2006 Cooperative Agreement (2009) at Attach. C.))

Third, neither the public interest nor the balance of the equities support a stay, the reasons for which have already been extensively documented in the Court's Opinion. The government's actions to remove displays from the President's House were contrary to law and thus "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" (*Id.* at 39.) Further, "with the parties accepting the displays as historically accurate, there is a public interest in the preservation and exhibition of that history." (*Id.*) And, as this Court recognized, "every day the President's House lacks interpretive material to express the City's intention to invest years of time, millions of dollars, and countless individual and collective efforts, the City of Philadelphia is deprived of the ability to honestly and accurately tell the story of its own history—as [Defendants] put[] it: to 'tell[] an important [tale].'" (*Id.* at 37-38.)

The City also observes that Defendants' submissions demonstrate the ease with which restoration can be effectuated. Per their own declaration, President's House—the product of over a decade of collaboration between the City, NPS, and the public—was dismantled by federal personnel in under three hours by using hand tools simply to "remove bolts fastening the exhibits to the walls." (*See* Declaration of Steven Sims (Jan. 27, 2026) (Doc. No. 27-1) at ¶ 6.) The removed materials were then placed in storage within two blocks of the site. (*See id.* at ¶ 8.) Per the inspection of this Court, the removal materials have not been destroyed. (*See* Inspection Report (Doc. No. 39).) Given these statements, the removed materials are close at hand and it does not appear that Defendants would incur any significant expense or hardship in connection with their restoration. (*Compare* Supp. Declaration of Steven Sims (Feb. 13, 2026) (Doc. No. 52-1) at ¶ 4 (estimating cost of reprinting and replacing removal materials to be $20,000).) Thus, for both the same reasons set forth in the Opinion as well as the lack of harm Defendants would

suffer to comply as evidenced by Defendants' own papers, this Court should find that the equities and the public interest weigh in favor of maintaining the injunction and denying a stay.

## V.     CONCLUSION

For all of the reasons set forth herein, the City of Philadelphia respectfully submits that the Court should deny Defendants' Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CITY OF PHILADELPHIA<br>LAW DEPARTMENT |
| Date: February 19, 2026 | */s/ Bailey Axe*<br>Renee Garcia, City Solicitor<br>Anne Taylor, Chair \| Litigation<br>Lydia Furst, Chief Deputy City Solicitor<br>Ryan B. Smith, Divisional Deputy City Solicitor<br>Bailey Axe, Deputy City Solicitor<br>City of Philadelphia Law Department<br>1515 Arch Street, 15th Floor<br>Philadelphia, PA 19102<br>(215) 683-5024<br>bailey.axe@phila.gov |
|  | *Attorneys for Plaintiff the City of Philadelphia* |