**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| **CITY OF PHILADELPHIA,** |
| **Plaintiff,** |
| **v.** |
| **DOUG BURGUM,** *et al.*, |
| **Defendants.** |

**CIVIL ACTION NO.  26-434**

## ORDER DENYING EMERGENCY STAY

On February 18, 2026, Defendants filed an Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal [Doc. No. 65], requesting that this Court order a stay of its February 16, 2026 preliminary injunction requiring restoration of the President's House site to its physical condition as of January 21, 2026. Plaintiff the City of Philadelphia ("the City") responded in opposition to the motion on February 19, 2026 [Doc. No. 68].

The decision to stay a preliminary injunction is within the discretion of the district court. In considering whether to grant a stay, the Court considers "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[1] Courts balance these factors and "consider the relative strength of the four factors."[2] "The most critical factors … are the first two."[3] In the Third Circuit, "the bar is set particularly high" for granting a stay

---

[1] *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see* Fed. R. App. P. 8; Fed. R. Civ. P. 62.

[2] *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

[3] *Id.* (citations omitted).

pending appeal.[4] Indeed, "a [movant's] failure to establish any element in its favor renders a [stay] inappropriate."[5] "[A] sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'"[6] Under this standard, a chance of success on the merits that is merely "better than negligible" is not sufficient, but a showing that success on appeal is "more likely than not" is not required.[7] Another court in this district has noted that "[t]he bar is particularly high where the movant is seeking immediate relief from a preliminary injunction granted after an evidentiary hearing, since the movant is effectively asking the court to negate the preliminary injunction that it just granted."[8]

As set forth below, the Court herein determines that Defendants have failed to establish the elements necessary to prevail.

## Likelihood of Success on Merits

Defendants first address the merits. While referencing without arguing "other dispositive points," Defendants concentrate on the argument that they "will likely prevail on its argument that the City lacks standing."[9] They submit that the Court erred, first, by failing to articulate the tools of statutory construction applicable to interpreting 16 U.S.C. § 407n and, second, by adopting an interpretation that was erroneous.[10]

---

[4] *Conestoga Wood Specialties Corp. v. Sec'y U.S. Dep't Health & Human Services*, 2013 WL 1277419 at *1 (3d Cir. 2013) (noting that "the standard for a stay pending appeal is essentially the same as that for obtaining a preliminary injunction").

[5] *Id*. (quoting *NutraSweet Co. v. Vit-Mar Enter., Inc*., 176 F.3d 151, 153 (3d Cir. 1999)) (applying precedent on preliminary injunctions to consideration of a stay).

[6] *In re Revel AC, Inc*., 802 F.3d at 568 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir.2011) (en banc)).

[7] *Id*. at 569.

[8] *Victory v. Berks Cnty*., 2019 WL 2368579, at *5 (E.D. Pa., June 3, 2019) (internal quotations omitted).

[9] Defs.' Emergency Mot. for Stay at 3 [Doc. No. 65].

[10] *Id.*

The Court considered the City's and government's interpretations of § 407n and accepted the City's argument that it foreclosed changes to the display's message without consultation. The Court remains of the view that the textual terms show that the Park and Site are interrelated. That the parties have previously and continuously conducted themselves in accordance with and relying on an interpretation that counters the government's argument only reinforces the Court's view.[11] In any event, the Court also reasons that the legislative history of § 407n is relevant.[12]

The Court's conclusion on standing also rests upon additional considerations. For instance, the Court found that, consistent with the direction of Congress in its enactment of § 407n, the parties entered into a 1950 Agreement dedicated to a "unified, long-range program of preservation, development, protection, and interpretation for the whole Independence National Historical Park."[13] Under the source of authority provided to it by Congress, the National Park Service ("NPS") "pledge[d]" to the City "to consult on all matters of importance to the project."[14] Similarly, the Court found that the parties' 2006 Agreement and subsequent amendments, born of legislative direction, recognized the City's financial investment in the project and contained surviving provisions that required mutual agreement as to "[p]rofound alternations to [the] framework" focusing on "the systems and methods of slavery."[15]

---

[11] *See* Mem. Op. at 19.

[12] *See In re Philadelphia Newspapers*, 599 F.3d 298, 314 (3d Cir. 2010) (noting "a narrow exception to the plain meaning rule in the rare cases [where] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)); *see also Morgan v. Gay*, 466 F.3d 276, 278 (3d Cir. 2006).

[13] Mem. Op. at 14-15 [Doc. No. 53]; Pl.'s Ex. 1, 1950 City-US Cooperative Agreement ("1950 Agreement") at 6 [Doc. No. 36-1].

[14] Mem. Op. at 15 [Doc. No. 53]; 1950 Agreement at 6 [Doc. No. 36-1].

[15] Mem. Op. at 16; 1950 Agreement at 6 [Doc. No. 36-1]; 2009 Third Amendment to Cooperative Agreement ("Third Amendment") at Attach. C [Doc. No. 36-6]; *see also* Mem. Op. at 18 & nn. 100, 102 [Doc. No. 53].

For these reasons, the Court concludes that Defendants have not made a sufficiently strong showing that they are likely to prevail on appeal.

**Irreparable Harm**

The second critical factor to consider is irreparable harm to the movant in the absence of a stay, that is, "harm that cannot be prevented or fully rectified by a successful appeal."[16] "[S]imply showing some 'possibility of irreparable injury' fails to satisfy" this factor.[17] The government devotes most of its argument on irreparable harm to the impact of this Court's interpretation of a statute. By definition, a judicial interpretation, if improper, can be rectified by a successful appeal.

Contrary to the government's assertion, the preliminary injunction that was issued does not provide the City a right to act "as a backseat driver holding veto power."[18] In enacting legislation to create Independence National Historical Park, Congress authorized the Secretary of the Interior to administer the park under § 407n. But that administration was necessarily limited by the cooperative agreements that Congress envisioned. By issuing a preliminary injunction to restore the President's House to its prior physical status, the Court gave effect to limits Congress recognized and that the parties' mutually understood in their series of cooperative agreements. The injunction did not limit NPS authority outside of what it already agreed to in the cooperative agreements. Further, Defendants have not identified any "imminent" irreparable harm.[19]

---

[16] *In re Revel AC, Inc.*, 802 F.3d at 568 (internal quotations omitted).

[17] *Nken v. Holder*, 556 U.S. 418, 435 (2009) (internal citations omitted).

[18] Defs.' Emergency Mot. for Stay at 4 [Doc. No. 65].

[19] *See Cont'l Grp. Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

The preliminary injunction orders the return of the President's House site to its physical status as of January 21, 2026, pending resolution of this case. The injunction does not permit the City to make demands of Defendants, veto any action unrelated to the President's House, or otherwise intrude on Defendants' authority. Defendants argue they suffer irreparable harm based on an interlocutory decision issued at the very outset of this case, which can be reviewed on appeal.

The government cites a case staying a district court order, which was not a preliminary injunction, that directed a federal agency to take certain actions.[20] There, declaratory and injunctive relief issued as a *final judgment*, which is vastly different from an interlocutory preliminary injunction. Justice O'Connor was considering a final judgment, and that judgment conflicted with then-recent Supreme Court precedent on the very question at issue.[21] This Court's preliminary injunction maintains the status quo while the merits of the case are litigated and considered. Defendants have ample opportunity to present evidence and legal arguments, including regarding 16 U.S.C. § 407q, which Defendants did not raise before filing their appeal.[22]

The government also argues it suffers irreparable harm from the preliminary injunction because it is not permitted to profess its preferred message—profession of which violates its statutory and contractual obligations and history of collaboration in crafting interpretation of the President's House. As this Court detailed in its Memorandum Opinion granting the preliminary injunction, the National Parks Service and the City agreed that interpretation of the site "will

---

[20] *I.N.S. v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers).

[21] *Id*.

[22] *See* Defs.' Resp. Opp. Am. Mot. for Prelim. Inj. [Doc. No. 52].

focus on the house and the people who lived and worked there, the Executive Branch of the U.S. [g]overnment, the systems and methods of slavery, African American Philadelphia, and the move to freedom for the enslaved."[23] That agreed-upon interpretation "stood for 15 years without alteration, conveying the whole, complicated truth."[24]

   The government cannot claim that its speech is being compelled or silenced by this Court. Nothing in the Court's order says it must say one thing or another concerning President Washington on or in any space or media that is in its sole domain or where it is present and allowed by permission to state its own point of view. The federal government does have the "right to speak for itself" and "to select the view it wants to express,"[25] but it does not have the right to disregard congressional directives and contractual obligations. Defendants have complied with congressional directives—including the 1948 legislation and the National Underground Railroad Network to Freedom Act—yet now the government pleads that it is harmed when its same obligations are enforced. As this Court established, "[t]he government can convey a different message without restraint elsewhere if it so pleases, but it cannot do so to the President's House until it follows the law and consults with the City."[26] Nor has the government established how any alleged First Amendment harm is irreparable and cannot be rectified by a successful appeal. The government has failed to show it suffers any irreparable harm from maintenance of the preliminary injunction pending appeal.

---

[23] Mem. Op. at 8 (quoting Third Amendment, Attach. C [Doc. No. 36-6]).

[24] Pl's. Resp. Opp. Defs.' Emergency Mot. for Stay at 6 [Doc. No. 68].

[25] *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009).

[26] Mem. Op. at 40 [Doc. No. 53].

**Harm to Other Parties**

Defendants also argue there is no harm to other parties if a stay is imposed because the removed exhibits and videos will be preserved pending conclusion of litigation. Defendants fail to address the many harms this Court identified in the preliminary injunction, preferring to argue that the analysis "improperly relied on harms alleged by various amici instead of the City."[27] The Court considered the legal arguments of *amici curiae* Governor Josh Shapiro, Avenging the Ancestors and the Black Journey, and the Members of the Democratic Caucus of the Senate of Pennsylvania. The Court did not accept any evidence from *amici*, despite a request to do so.

The government did not oppose *amici's* motions for leave to file *amicus curiae* briefs in support of the City by any *amici* whose arguments the Court considered. It did not object to this Court's consideration of *amici's* legal arguments. It also did not rebut any *amici* argument, either at the hearing or in writing.

*Amicus curiae* briefs are helpful to the Court by "[h]ighlighting factual, historical, or legal nuance glossed over by the parties" and "[p]roviding practical perspectives on the consequences of potential outcomes."[28] Here, *amici* provided factual, historical, and legal nuance and provided practical perspectives on the consequences of potential outcomes, which the Court considered in connection with the parties' arguments. *Amici* supported the City's argument that removal of the interpretive displays and exhibits "constitutes erasure, undermines public trust, and compromises the integrity of public memory."[29] This harm is particularized to the City

---

[27] Defs.' Emergency Mot. for Stay at 4 [Doc. No. 65].

[28] § 3975 Authorization to File an Amicus Brief, 16AA Fed. Prac. & Proc. Juris. § 3975 n.23 (5th ed.) (quoting *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020) (Scudder, J., in chambers).

[29] Pl.'s Am. Mot. for Prelim. Inj. at 40-41 [Doc. No. 45].

7

because it is responsible for the public trust in the City's telling of its own history, its own integrity in telling that history, and preventing erasure of that history, particularly in advance of the semiquincentennial.

As the City emphasizes from this Court's Memorandum Opinion, "each day that [the] 'President's House lacks interpretive material to express the City's intention to invest years of time, millions of dollars, and countless individual and collective efforts,' the City suffers harm."[30]

## Public Interest

It is in the public interest to deny a stay. As this Court recognized, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'"[31] The government did not have statutory authority to remove the displays without consultation and agreement with the City, so the public interest favors lawful government action. There is also a public interest in the presentation and exhibition of historically accurate information.[32]

Balancing the four factors, the balance of harms tips heavily in the City's favor and Defendants are not likely to succeed on the merits of their claim. This Court's standing determination was not solely based on one issue or a single interpretation of a statute, and this Court is not convinced it improperly interpreted the 1948 legislation. The government has failed

---

[30] Pl's. Resp. Opp. Defs.' Emergency Mot. for Stay at 4 [Doc. No. 68].

[31] *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)); *see also Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025) ("[T]here is generally no public interest in the perpetuation of unlawful agency action."); *New York v. Kennedy*, 155 F.4th 67, 77 (1st Cir. 2025) (denying government's stay request and being mindful that state plaintiffs in an APA challenge were likely to succeed on the merits and that there is no public interest in unlawful agency action).

[32] *See Sayler Park Vill. Council v. U.S. Army Corps of Eng'rs*, No. C-1-02-832, 2002 WL 32191511, at *1 (S.D. Ohio Dec. 30, 2002).

to identify any irreparable harm resulting from denying a stay of the preliminary injunction that cannot be prevented or remedied by a successful appeal. Nor has the government persuaded the Court that the City will not suffer harm in the event of a stay. Finally, it is in the public interest to deny a stay. Particularly as the government has failed to establish any irreparable harm from a stay, the request for a stay pending appeal will be denied.

**AND NOW,** this 20th day of February 2026, upon consideration of Defendants' Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal [Doc. No. 65] and the responses thereto, it is hereby **ORDERED** that the Motion is **DENIED** as follows:

1. Defendants' request for a stay of this Court's February 16, 2026 preliminary injunction pending Defendants' interlocutory appeal of the Memorandum Opinion and Order is **DENIED**.

2. Defendants' request for an immediate administrative stay of the preliminary injunction is **DENIED as moot**.[33]

3. Defendants' request for a seven day administrative stay of the preliminary injunction for the purposes of seeking an emergency stay from the Third Circuit Court of Appeals is **DENIED**.

It is so **ORDERED**.

> **BY THE COURT:**
>
> /s/ **Hon. Cynthia M. Rufe**
> _____
> **HON. CYNTHIA M. RUFE, J.**

---

[33] Defendants' request is moot because the parties have completed briefing before this Court as to the preliminary injunction and Emergency Motion for a Stay. Accordingly, no administrative stay is required.