IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUG BURGUM, SECRETARY OF THE INTERIOR, *et al.*,<br><br>　　　　Defendants. | Case No. 26-cv-434 |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

For the reasons explained in the accompanying memorandum of law, Defendants

move to dismiss Plaintiff's amended complaint (ECF No. 44) under Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6).

Dated:  April 1, 2026　　　　　　　Respectfully submitted,

BRETT A. SHUMATE　　　　　　　DAVID METCALF
Assistant Attorney General　　　　　United States Attorney

MICHAEL VELCHIK　　　　　　　GREGORY B. DAVID
Senior Counsel to the Assistant　　　Assistant United States Attorney
Attorney General　　　　　　　　Chief, Civil Division

　　　　　　　　　　　　　　　*/s/ Susan R. Becker*
　　　　　　　　　　　　　　　SUSAN R. BECKER
　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　Deputy Chief, Civil Division

_/s/ Gregory B. in den Berken_
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone:    (215) 861-8200
Email:    gregory.indenberken@usdoj.gov

_Counsel for Defendants_

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CITY OF PHILADELPHIA,

       Plaintiff,

    v.

DOUG BURGUM, SECRETARY OF THE
INTERIOR, *et al.*,

       Defendants.

Case No. 26-cv-434

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD ...................................................................................................2

ARGUMENT............................................................................................................3

I.    The Tucker Act Bars Counts I and II ................................................................ 3

        A.    Count I Should Be Formally Dismissed.......................................................4

        B.    Count II Is Equally Barred ............................................................................4

II.   Count II Fails Independently Because the Network to Freedom Act Imposes
        No Site-Level Content Mandate................................................................... 6

III.  Count III Fails Because 16 U.S.C. § 407n Does Not Extend to the President's
        House.......................................................................................................8

IV.   Count IV Fails Because the Agency Materials Do Not Create Enforceable
        Rights...................................................................................................... 10

V.    Count V Must Be Dismissed.......................................................................13

CONCLUSION.........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.,*
   357 F.3d 62 (D.C. Cir. 2004) ........................................................................... 3

*Armstrong v. Exceptional Child Ctr. Inc.,*
   575 U.S. 320 (2015) ....................................................................................... 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 2

*Barnhart v. Sigmon Coal Co.,*
   534 U.S. 438 (2002) ........................................................................................ 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 2

*Nuclear Regul. Comm'n v. Texas,*
   605 U.S. 665 (2025) ................................................................................. 13, 14

*Const. Party of Penn. v. Aichele,*
   757 F.3d 347 (3d Cir. 2014) ........................................................................... 2

*Doe v. Princeton Univ.,*
   30 F.4th 335 (3d Cir. 2022) ............................................................................ 2

*Encino Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016) ....................................................................................... 12

*Freeman v. Quicken Loans, Inc.,*
   566 U.S. 624 (2012) ..................................................................................... 7, 9

*Gatter v. Nimmo,*
   672 F.2d 343 (3d Cir. 1982) ......................................................................... 11

*Hahn v. United States,*
   757 F.2d 581 (3d Cir. 1985) ........................................................................... 5

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ...................................................................................... 13

*Horses of Cumberland Island v. Haaland,*
   No. 23-cv-1592, 2024 WL 5430835 (N.D. Ga. Nov. 8, 2024) ...................... 11

ii

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,*
  507 U.S. 163 (1993)............................................................................................7

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) ........................................................................................ 10

*Loving v. IRS,*
  742 F.3d 1013 (D.C. Cir. 2014) ...................................................................... 12

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982)................................................................... 3, 4, 5

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,*
  463 U.S. 29 (1983) ........................................................................................... 13

*National Institutes of Public Health v. American Public Health Ass'n,*
  145 S. Ct. 2658 (2025) ...................................................................................... 5

*Pennsylvania Dep't of Hum. Servs. v. United States,*
  897 F.3d 497 (3d Cir. 2018) ............................................................................. 11

*Robbins v. U.S. Bureau of Land Mgmt.,*
  438 F.3d 1074 (10th Cir. 2006)........................................................................ 3

*Rubin v. Islamic Republic of Iran,*
  583 U.S. 202 (2018) ......................................................................................... 9

*Schweiker v. Hansen,*
  450 U.S. 785 (1981) ......................................................................................... 11

*Sea-Land Serv., Inc. v. Brown,*
  600 F.2d 429 (3d Cir. 1979) ......................................................................... 3, 4

*Shapiro v. U.S. Dep't of Agric.,*
  No. 25-cv-998, 2025 WL 3473291 (M.D. Pa. Dec. 3, 2025) .......................... 3

*Sosa v. Alvarez-Machain,*
  542 U.S. 692 (2004) ......................................................................................... 9

*Sustainability Inst. v. Trump,*
  No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ............................. 13

*United States v. Rutherford,*
  120 F.4th 360 (3d Cir. 2024)........................................................................... 8

*The Wilderness Soc. v. Norton,*
  434 F.3d 584 (D.C. Cir. 2006).......................................................................... 11

*Wis. Cent. Ltd. v. United States*,
  585 U.S. 274 (2018) ...........................................................................................10

**STATUTES**

5 U.S.C. § 701(a)(2) ............................................................................................ 2, 13

16 U.S.C. § 407n .............................................................................................. 1, 8, 9

16 U.S.C. § 407m ....................................................................................................8

28 U.S.C. § 1346(a)(2) ..........................................................................................3, 4

28 U.S.C. § 1491(a)(1) .............................................................................................3

54 U.S.C. § 308302 ...............................................................................................4, 6

54 U.S.C. § 308303 ..............................................................................................6, 7

**OTHER AUTHORITIES**

Nat'l Park Serv., *Application Instructions: National Underground Railroad
  Network to Freedom Application*,
  https://perma.cc/SFS3-PQ3B (last updated Jan. 21, 2026; captured Mar. 27,
  2026)......................................................................................................................6

Nat'l Park Serv., *Director's Order No. 2*,
  https://perma.cc/ZRN8-KWT3 (captured Apr. 1, 2026) ..............................11

Nat'l Park Serv., *Management Policies 2006* (as amended),
  https://perma.cc/3556-43ES (captured Mar. 27, 2026)..............................11

Nat'l Park Serv., *National Underground Railroad Network to Freedom Application and
  Partner Requests Instructions* (OMB Control No. 1024-0232),
  https://perma.cc/5J7Z-TFMV (captured Mar. 27, 2026) .............................6

**INTRODUCTION**

At the preliminary-injunction stage, this Court determined that Count I—the City of Philadelphia's breach-of-contract claim brought under the Administrative Procedure Act—"undeniably sounds in contract," and that the Tucker Act "impliedly forbids the City from obtaining relief" on that claim. ECF No. 53 at 24. The Court thus declined to rest its preliminary injunction on Count I. Count I should now be formally dismissed.

But Count I is not alone. Count II is barred by the Tucker Act for the same reason—the City's alleged rights are rooted in contract, not in the National Underground Railroad Network to Freedom Act, which imposes no site-level content obligations—and independently fails to state a claim for the same reason. And Count III fails to state a claim because 16 U.S.C. § 407n's mutual-consent requirement does not extend to the President's House, which lies outside the statute's geographic scope. Count IV fails because the Foundation Document and related agency materials are expressly non-binding internal management documents that cannot anchor an APA claim. And Count V fails for three independent reasons: § 407n does not supply the specific statutory prohibition that an ultra vires claim requires; the Tucker Act bars this claim for the same reasons that it bars Count I; and this Court's determination that the APA provides adequate review forecloses an alternative ultra vires claim. Beyond these count-specific grounds, because no statute, regulation, or binding policy prescribes what NPS must

display at the President's House, all of the APA counts independently fail as challenges to action committed to agency discretion by law. 5 U.S.C. § 701(a)(2).[1]

The Court should thus dismiss the City's amended complaint (ECF No. 44).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires that the complaint contain more than "labels and conclusions," *id.*, and the court should "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements," *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citation omitted). Dismissal is proper when the facts alleged fail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If a defendant asserts that subject-matter jurisdiction is lacking under Rule 12(b)(1) based on the face of the complaint—as the Government asserts here—then the court will apply "the same standard of review [that] it would use in considering a motion to dismiss under Rule 12(b)(6)." *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

---

[1] For the sake of efficiency, the Government's motion to dismiss does not raise the full range of arguments that it advanced in its opposition to the City's preliminary-injunction motion (ECF No. 52) and in its opening brief before the Third Circuit (case no. 26-1348, Doc. 36). But the Government's targeted approach here should not be confused for any sort of abandonment of those arguments.

**ARGUMENT**

## I.     The Tucker Act Bars Counts I and II

Under the Tucker Act, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004) (citation omitted);[2] *see also* 28 U.S.C. § 1346(a)(2).

To evaluate whether a plaintiff's claim sounds in contract, courts look to substance rather than labels. *See, e.g.*, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *Shapiro v. U.S. Dep't of Agric.*, No. 25-cv-998, 2025 WL 3473291, at *4 (M.D. Pa. Dec. 3, 2025) (applying *Megapulse*). Specifically, courts examine both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse*, 672 F.2d at 968 (citation omitted); *see also Shapiro*, 2025 WL 3473291, at *4. Indeed, this Court recognized and applied this framework in ruling on the City's motion for a preliminary injunction. ECF No. 53 at 23 ("the Tucker Act 'impliedly forbids' district courts from reviewing APA claims if the 'source of the rights upon which the plaintiff bases its claims' is contractual" (quoting *Megapulse*, 672 F.2d at 968)).

---

[2]     *See also Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1082 (10th Cir. 2006) (holding the same); *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 433-34 (3d Cir. 1979) (same).

### A.    Count I Should Be Formally Dismissed

As this Court observed in ruling on the City's motion for a preliminary injunction, Count I "undeniably sounds in contract." *Id.* at 24. The Court further recognized that the Tucker Act thus "impliedly forbids the City from obtaining relief" on that claim. *Id.* Consistent with these observations, the Court should dismiss Count I for lack of subject-matter jurisdiction based on the Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 433 (3d Cir. 1979).

### B.    Count II Is Equally Barred

The Tucker Act "impliedly forbids" APA review where the "source of the rights upon which the plaintiff bases its claims" is contractual rather than statutory. *Megapulse*, 672 F.2d at 968. To make that determination, courts look past the label placed on a claim and examine its substance. *See id.* Here, Count II is styled as a statutory claim—but its substance is contractual. Count II is thus barred as well.

Count II alleges that NPS acted arbitrarily and capriciously "in violation of" the National Underground Railroad Network to Freedom Act by removing panels documenting Oney Judge's escape and her connection to the President's House site. Am. Compl. ¶¶ 85-101. But the Network to Freedom Act contains no provision that would be violated by removal of the exhibits. The Act directs the Secretary of the Interior to "establish" a program and "produce and disseminate appropriate educational materials," 54 U.S.C. § 308302(a), authorizes the Secretary to enter into cooperative agreements and memoranda of understanding, *id.* § 308302(c), and allows the Secretary to award grants for related activities, *id.* § 308303. Yet it does not impose any obligation to maintain particular exhibits at a designated site.

4

Because the Act imposes no relevant restriction here, the City repeatedly relies on contractual materials to support Count II. *See, e.g.*, Am. Compl. ¶¶ 98-100 (relying on 2009 amendment to 2006 Cooperative Agreement for Count II); *see also* ECF No. 45 (City's PI brief) at 28-31 (same); ECF No. 60 (Jan. 30, 2026 Hr'g Tr.) at 154:15-155:7, 155:22-24 (invoking 2006 Cooperative Agreement for original APA claim based on Act). But a plaintiff cannot recast a contract claim as a statutory one to evade the Tucker Act. *See Hahn v. United States*, 757 F.2d 581, 588-89 (3d Cir. 1985) ("This jurisdictional route may not be used to circumvent limitations on district court jurisdiction created by the Tucker Act."). And where the source of the plaintiff's rights is contractual rather than statutory, the claim sounds in contract regardless of how it is labeled. *Megapulse*, 672 F.2d at 968.

At the preliminary-injunction stage, the Court relied on *National Institutes of Public Health v. American Public Health Ass'n* (*NIPH*), 145 S. Ct. 2658 (2025), and determined that Count II is not subject to the Tucker Act because it challenges official action alleged to be "contrary to . . . statutory mandate." ECF No. 53 at 24. But *NIPH* involved the termination of federal grants governed by specific statutory frameworks that imposed independent substantive and procedural requirements on the termination process. Those requirements existed independently of any contract—meaning the plaintiffs' rights were based on a statute rather than a contract. The opposite is true here. No provision of the Network to Freedom Act obligates NPS to maintain specific content at the President's House or to weigh Network to Freedom considerations when making site-level interpretive decisions. So *NIPH* does not rescue Count II from the Tucker Act bar.

Count II should thus be dismissed for lack of subject-matter jurisdiction.

5

## II.    Count II Fails Independently Because the Network to Freedom Act Imposes No Site-Level Content Mandate

Even if Count II survived the Tucker Act bar, it should be dismissed under Rule 12(b)(6) for failure to state a claim. The City alleges that NPS's removal of the exhibits was arbitrary and capricious in violation of the Network to Freedom Act. But that theory fails as a matter of law because the Act imposes no site-level content obligation that NPS was required to consider.

As noted above, the Act directs the Secretary of the Interior to "establish" a program and "produce and disseminate appropriate educational materials" and authorizes cooperative agreements and grants. 54 U.S.C. §§ 308302-03. But it says nothing about the content that must be displayed at any particular Network site. It contains no decision-making criteria governing what exhibits must be retained. And it expressly does not guarantee protection of threatened sites. NPS's own program materials confirm that "[i]nclusion in the Network does not guarantee that a threatened site will be protected or that preservation will occur." Nat'l Park Serv., *National Underground Railroad Network to Freedom Application and Partner Requests Instructions* (OMB Control No. 1024-0232) at 2, https://perma.cc/5J7Z-TFMV (captured Mar. 27, 2026).[3] So a designation under the Act carries no implied mandate to preserve any specific interpretive content.

To be sure, the Act does contain provisions that specify when alterations to designated property would be restricted. Section 308303(b)(1) provides that grants

---

[3]    *See also* Nat'l Park Serv., *Application Instructions: National Underground Railroad Network to Freedom Application*, https://perma.cc/SFS3-PQ3B (last updated Jan. 21, 2026; captured Mar. 27, 2026) ("Historic sites and properties included in the Network are not bound by any legal requirements to comply with Federal historic preservation laws, based on their inclusion in the Network alone.").

awarded by the Secretary under the Act must specify that "no change or alteration may be made in property for which the grant is used except with the agreement of the property owner and the Secretary." And § 308303(b)(3) requires that any grant specify that "conversion, use, or disposal of the property for purposes contrary to the purposes of this chapter" would require returning the funds.[4] Congress thus specified the limited circumstances in which alterations to Network to Freedom property would be restricted. That explicit direction further supports the conclusion that there is no additional implicit restriction outside of that limited circumstance. *See, e.g.*, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("*expressio unius est exclusio alterius*").

At the preliminary-injunction stage, the Court determined that the Government's "removal of the displays discounted the purpose of the Network: to preserve and protect historical sites like that of Oney Judge's bondage and escape." ECF No. 53 at 27. But the President's House remains designated as a Network to Freedom site—removal of the exhibits does not affect that designation, and the Act imposes no requirement beyond that. Nor do notions of statutory purpose warrant implying a statutory requirement that the text does not contain. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012).

Without a statutory hook requiring NPS to weigh the Act's objectives before making interpretive decisions at the President's House, the City's Count II fails as a matter of law. Count II should thus be dismissed for failure to state a claim.

---

4   It also bears noting that the authority to determine whether such use would be "contrary to the purposes of this chapter" is explicitly vested in the Secretary. 54 U.S.C. § 308303(b)(3) ("as determined by the Secretary").

### III.    Count III Fails Because 16 U.S.C. § 407n Does Not Extend to the President's House

Count III alleges that NPS's removal of the President's House exhibits was arbitrary and capricious in violation of 16 U.S.C. §§ 407m and 407n. That claim should also be dismissed under Rule 12(b)(6) for failure to state a claim. As explained in the Government's opposition to the City's amended preliminary-injunction motion (ECF No. 52 at 7-13) and opening brief before the Third Circuit (case no. 26-1348, Doc. 36 at 37-46), § 407n's mutual-consent requirement is limited to "the property within the Independence Hall National Historic Site"—Independence Square. The President's House is located a block north and is not covered by that statutory language. Because § 407n does not extend to the President's House, NPS's removal of the exhibits cannot be arbitrary and capricious in violation of that statute. Count III thus fails as a matter of law.

This Court previously concluded that § 407n is ambiguous because it also mentions Carpenter's Hall, which lies outside Independence Square, and resolved that ambiguity based on legislative history, the parties' course of conduct, and the statute's purpose. ECF No. 53 at 18-21; ECF No. 70 at 3. As detailed further in the Government's stay motion and opening brief before the Third Circuit (case no. 26-1348, Docs. 8, 36), that reasoning is incorrect. The Government summarizes these arguments here:

The threshold problem is sequencing. An ambiguity determination comes only after exhausting the traditional tools of statutory construction, not before. *United States v. Rutherford*, 120 F.4th 360, 380 n.28 (3d Cir. 2024). This Court declared that the "region of the Park that is subject to bilateral decision-making" is ambiguous, ECF No.

53 at 19, without first identifying which statutory term it found unclear or applying traditional tools of statutory construction. That error colors everything that followed.

There is also no ambiguity. Section 407n authorizes the Secretary to enter into cooperative agreements with two parties to manage two specific properties: (1) with the City regarding "the property known as the Independence Hall National Historic Site," and (2) with the Carpenters' Company regarding "Carpenters' Hall." The statute's references to two properties do not render either term unclear. To the contrary—they confirm that Congress carefully delineated the statute's scope as it applies to each property. Reading "Independence Hall National Historic Site" and "Independence National Historical Park" as synonymous also violates the canon against surplusage and the rule that different statutory terms carry different meanings. *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).

The considerations this Court identified do not alter the analysis. Notions of statutory purpose do not warrant implying a geographic scope that the text does not contain. *See, e.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (Court "w[ould] not alter" statutory text "in order to satisfy" policy preferences). And the House Report's aspirational language about a unified program for the whole Park cannot amend the geographically bounded text of § 407n. *Id.* at 456 ("Floor statements from two Senators cannot amend the clear and unambiguous language of a statute."); *see also Freeman*, 566 U.S. at 637 ("[v]ague notions of statutory purpose provide no warrant for expanding [a statutory term] beyond the field to which it is unambiguously limited"). As for the parties' course of dealing, this Court found that the City and NPS "have consistently relied upon § 407n as a source of statutory authority for conducting

9

cooperative agreements that relate to the development of the President's House." ECF No. 53 at 19. But even if that were true, course of conduct cannot change the meaning of a statute. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) ("[E]very statute's meaning is fixed at the time of enactment."); *accord Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (observing that this is "the whole point of having written statutes").

Finally, in ruling on the merits of Count III at the preliminary-injunction stage, this Court cross-referenced its standing analysis to dispose of the geographic-scope argument, declining to address it anew. ECF No. 53 at 27 n.147. But the geographic scope of § 407n is a question of statutory interpretation that bears directly on whether Count III states a cognizable claim, and it is properly before the Court on a motion to dismiss. The conclusion that § 407n is ambiguous and extends park-wide is not established by the PI ruling; it remains contested and subject to de novo review.

Because § 407n does not extend to the President's House, Count III should be dismissed for failure to state a claim.

## IV.    Count IV Fails Because the Agency Materials Do Not Create Enforceable Rights

Count IV alleges that NPS's removal of the exhibits was arbitrary and capricious in violation of NPS's internal agency documents. That claim should also be dismissed under Rule 12(b)(6) for failure to state a claim. The cited documents are purely internal management documents that do not create enforceable rights or provide enforceable standards. Count IV thus fails as a matter of law.

NPS's own Management Policies—the governing authority under which Foundation Documents are issued—provide that the Policies "are not intended to, and

10

do not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States." Nat'l Park Serv., *Management Policies 2006* (as amended) at 4, https://perma.cc/3556-43ES (captured Mar. 27, 2026). The Director's Order relied on by the City provides similar language.[5] The Foundation Document, which sits below the Policies in NPS's planning hierarchy, explains that it is an internal planning guide that provides "basic guidance for planning and management decisions." ECF No. 36-8 at 8.

Courts have consistently held that these kinds of agency documents are non-binding and cannot support freestanding APA claims. *See, e.g.*, *Pennsylvania Dep't of Hum. Servs. v. United States*, 897 F.3d 497, 513 (3d Cir. 2018) (agency manual "was not binding" because it "satisf[ies] none of the criteria which have been developed by the courts to determine whether agency regulations have the force of law" (quoting *Gatter v. Nimmo*, 672 F.2d 343, 347 (3d Cir. 1982))); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the [agency]."); *The Wilderness Soc. v. Norton*, 434 F.3d 584, 596 (D.C. Cir. 2006) ("the conclusion is inescapable that the Management Polic[i]es is a nonbinding, internal agency manual intended to guide and inform Park Service managers and staff"); *Horses of Cumberland Island v. Haaland*, No. 23-cv-1592, 2024 WL 5430835, at *11 (N.D. Ga. Nov. 8, 2024) (same).

---

5    Nat'l Park Serv., *Director's Order No. 2* § 2, https://perma.cc/ZRN8-KWT3 (captured Apr. 1, 2026) (specifying that "[t]his Order lacks the force and effect of law" and "is intended only to improve the internal management of the NPS, and is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person").

This Court previously acknowledged that the Foundation Document may lack binding force but (1) concluded that more recent D.C. Circuit authority requires agencies to explain departures from non-binding policy, and (2) reasoned that *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016), supports that trend. ECF No. 53 at 30-31. But that is not accurate. The principal authority cited by the Court, *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014), involved a challenge to new IRS regulations that the agency defended based on a revised interpretation of its statutory authority. In conducting de novo review of the IRS's statutory interpretation, the D.C. Circuit relied on an earlier contrary interpretation by the agency (among other tools of construction)—which was announced in Congressional testimony and an IRS guidance document—to hold that the IRS's new interpretation was contrary to the statute. *Id.* at 1021. But the court did not hold or endorse the notion that nonbinding internal guidance documents can themselves support a free-standing APA claim. Nor does *Encino Motorcars* support that conclusion. That case was a suit between private parties and involved an agency's reversal of statutory interpretation announced through notice-and-comment rulemaking, not a departure from a non-binding internal document. 579 U.S. at 218-20. The Court did not hold or suggest that any policy change can independently support an APA claim.

Count IV should thus be dismissed for failure to state a claim.

\*   \*   \*

These points also establish that the APA provides no cause of action for Counts II through IV. As explained above, no statute, regulation, or binding policy prescribes what NPS must display at the President's House. That absence is itself dispositive: where no meaningful legal standard governs an agency's exercise of discretion, the action is

"committed to agency discretion by law" and the APA's waiver of sovereign immunity does not apply. 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Without law to apply, courts cannot conduct arbitrary-and-capricious review—they can only substitute their own judgment for the agency's, which is precisely what that framework is designed to prevent. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Counts II, III, and IV should thus independently be dismissed for challenging action committed to agency discretion by law.

## V.    Count V Must Be Dismissed

Count V asserts an ultra vires claim based on NPS's removal of the exhibits. Am. Compl. ¶¶ 134-38. That claim should also be dismissed under Rule 12(b)(6) for three independent reasons.

First, ultra vires review requires that the agency acted "entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (cleaned up). This Court found that specific prohibition in § 407n's mutual-consent requirement. ECF No. 53 at 34-35. But as explained above in Section III, § 407n does not extend to the President's House. A statute that does not apply cannot supply the "specific prohibition" that an ultra vires claim requires.

Second, the Tucker Act bars Count V to the same extent it bars Counts I and II. Ultra vires claims remain subject to "express and implied statutory limitations" like the Tucker Act. *Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 327 (2015); *see also Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (citing *Armstrong* and observing that "it appears unlikely that Plaintiffs' ultra vires claims . . . would provide a detour around the Tucker Act"). Count V is

13

substantively identical to Count I: both assert that NPS removed exhibits without the City's consent in violation of rights grounded in the cooperative agreements. If the Tucker Act bars direct enforcement of those rights through a contract claim—as this Court acknowledged, ECF No. 53 at 23—then it also bars enforcement through an ultra vires theory resting on the same contractual foundation.

Third, and most fundamentally, this Court's own reasoning forecloses Count V. As this Court acknowledged at the preliminary-injunction stage, "[u]ltra vires review is unavailable if a statutory review scheme provides a meaningful and adequate opportunity for judicial review." ECF No. 53 at 33 (citing *Nuclear Regul. Comm'n*, 605 U.S. at 680). The Court held that the APA provides such an avenue for review on Counts II, III, and IV. This Court accepted Count V as an alternative "in the event that the Court were to find that the APA does not provide a meaningful and adequate opportunity for judicial review." ECF No. 53 at 35. But having determined that the APA does apply, the predicate for any alternative ultra vires claim is gone. The City cannot simultaneously maintain that the APA provides an avenue for review and that ultra vires review is also available for the same agency action.

Count V should thus be dismissed.

### CONCLUSION

The Court should dismiss the City's amended complaint.

Dated:  April 1, 2026                                Respectfully submitted,

BRETT A. SHUMATE                            DAVID METCALF
Assistant Attorney General                  United States Attorney

MICHAEL VELCHIK                             GREGORY B. DAVID
Senior Counsel to the Assistant             Assistant United States Attorney
Attorney General                            Chief, Civil Division

/s/ *Susan R. Becker*
SUSAN R. BECKER
Assistant United States Attorney
Deputy Chief, Civil Division

/s/ *Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone:    (215) 861-8200
Email:    gregory.indenberken@usdoj.gov

*Counsel for Defendants*

15

## CERTIFICATE OF SERVICE

I certify that on April 1, 2026, a true and correct copy of Defendants' Motion to Dismiss Plaintiff's Amended Complaint was filed electronically via the Court's CM/ECF system and served via CM/ECF on all counsel of record.

/s/ Gregory B. in den Berken
GREGORY B. IN DEN BERKEN