IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CITY OF PHILADELPHIA,<br><br>     Plaintiff,<br><br>     v.<br><br>DOUG BURGUM, SECRETARY OF THE INTERIOR, *et al.*,<br><br>     Defendants. | Case No. 26-cv-434 |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General

DAVID METCALF
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

GREGORY B. IN DEN BERKEN
Assistant United States Attorney

*Counsel for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT.................................................................................................... 2

I.      The Tucker Act Bars Counts I and II ................................................... 2

        A.      Count I Should Be Dismissed ........................................................ 2

        B.      Count II Is Equally Barred .............................................................4

II.     Count III Fails Because 16 U.S.C. § 407n Does Not Reach the President's
        House................................................................................................5

III.    Counts II and IV Independently Fail Because There Is No Yardstick for
        Review .............................................................................................. 6

IV.     Count V Is Not Cognizable ....................................................................... 9

CONCLUSION ............................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Clark v. K-Mart Corp.*,
  979 F.2d 965 (3d Cir. 1992).................................................................................. 1

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ...........................................................................................9

*Hahn v. United States*,
  757 F.2d 581 (3d Cir. 1985) ............................................................................3, 4

*INS v. Yang*,
  519 U.S. 26 (1996) .............................................................................................8

*Leslie v. Att'y Gen. of U.S.*,
  611 F.3d 171 (3d Cir. 2010) ...............................................................................8

*Local 2855, AFGE (AFL-CIO) v. United States*,
  602 F.2d 574 (3d Cir. 1979)...............................................................................9

*Loving v. IRS*,
  742 F.3d 1013 (D.C. Cir. 2014) ..........................................................................9

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982)............................................................................3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*,
  463 U.S. 29 (1983)..............................................................................................8

*National Institutes of Public Health v. American Public Health Ass'n*,
  145 S. Ct. 2658 (2025) .......................................................................................4

*Pa. Dep't of Hum. Servs. v. United States*,
  897 F.3d 497 (3d Cir. 2018) ...............................................................................8

*Pacito v. Trump*,
  169 F.4th 895 (9th Cir. 2026) ......................................................................1, 2, 3

*Sutter v. Oxford Health Plans LLC*,
  675 F.3d 215 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013) .................................6

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954).............................................................................................8

*United States v. N.Y. Rayon Importing Co.*,
   329 U.S. 654 (1947) ..................................................................................... 3

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981)....................................................................................... 1

*Wis. Cent. Ltd. v. United States*,
   585 U.S. 274 (2018) ...................................................................................... 6

## STATUTES

16 U.S.C. § 407n ......................................................................................1, 5, 9

54 U.S.C. §§ 308301-04 ....................................................................................4

54 U.S.C. § 308303................................................................................................ 7

## OTHER AUTHORITIES

8 Fed. Reg. 7,283 (dated May 14, 1943; published June 1, 1943) ...................................... 6

**INTRODUCTION**

The City's opposition (ECF No. 97) to the Government's motion to dismiss (ECF No. 82) repeatedly invokes a flawed premise: that this Court's preliminary-injunction opinion effectively resolved the arguments raised by the Government's motion. That is wrong. "[B]ecause of the limited nature of the proceedings resulting in the preliminary injunction, any findings of fact and conclusions of law made at the preliminary stage are of no binding effect whatsoever." *Clark v. K-Mart Corp.*, 979 F.2d 965, 969 (3d Cir. 1992) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395-96 (1981)). So the question remains whether the City's amended complaint states a cognizable claim. It does not.

*First*, the Tucker Act bars Counts I and II. The City has admitted that Count I is a breach-of-contract claim seeking specific performance—a contractual remedy. The City now invokes a recent Ninth Circuit decision, *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026), to avoid the Tucker Act—but that case actually cuts the other way. And Count II is likewise contractual. Without a statutory hook in the National Underground Railroad Network to Freedom Act, Count II remains grounded in contract—so the Tucker Act applies.

*Second*, Count III fails because 16 U.S.C. § 407n does not reach the President's House. The City's contrary interpretation flouts the statute's text and contravenes fundamental principles of statutory interpretation. The City's opposition conspicuously offers no answer to the Government's statutory arguments. Instead, the City simply responds that its rights under § 407n expanded to cover the whole Park after Independence Square was "subsumed" into the Park. But that theory also has no basis in the text and violates the settled rule that statutory meaning is fixed at enactment.

*Third*, Counts II and IV fail independently for lack of a legal yardstick. The Network to Freedom Act imposes no site-level content mandate. The Foundation Document expressly disclaims legal effect. Without a statute, regulation, or binding policy that governs NPS's interpretive decisions at the President's House, there is no standard against which to measure APA review. So these claims fail as a matter of law— and nothing in the City's opposition salvages the claims.

*Finally*, Count V fails for three independent reasons: § 407n does not supply the specific statutory prohibition that an ultra vires claim requires; the Tucker Act bars this claim for the same reasons that it bars Counts I and II; and this Court's determination that the APA provides an avenue for review forecloses an alternative ultra vires claim.

The Court should thus dismiss the amended complaint.

## ARGUMENT

### I.     The Tucker Act Bars Counts I and II

This Court correctly determined at the preliminary-injunction stage that the Tucker Act "impliedly forbids the City from obtaining relief" on Count I, "its 'Breach of Contract Claim.'" ECF No. 53 at 24 (quoting ECF No. 45 at 23). The City now asks the Court to reconsider that conclusion based on *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026). As explained below, that nonbinding decision actually cuts the other way. Count I is barred by the Tucker Act. And the same is true for Count II, which is substantively contractual notwithstanding the City's labeling.

### A.     Count I Should Be Dismissed

Count I hinges on the 1950 and 2006 Cooperative Agreements. Am. Compl. ¶¶ 77-84. Indeed, the City has admitted that Count I is a "Breach of Contract Claim" seeking "specific performance"—"a contract remedy." ECF No. 45 at 23, 25. This Court

thus properly agreed that Count I "undeniably sounds in contract" and is subject to the Tucker Act. ECF No. 53 at 24. That conclusion follows from settled law. *See, e.g.*, *Hahn v. United States*, 757 F.2d 581, 586-89 (3d Cir. 1985); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).

The City now asks the Court (at 3-7) to "reevaluate" its conclusion about Count I based on *Pacito*, 169 F.4th 895. But *Pacito* actually confirms that the Tucker Act bars the claim. There, the Ninth Circuit explained that "if rights and remedies are *contractually* based then only the Court of Federal Claims" has jurisdiction, "even if the plaintiff formally seeks injunctive relief." *Pacito*, 169 F.4th at 925. The court ultimately determined that the plaintiffs' APA claim was cognizable because it sought to enforce a statutory mandate—not a contractual right. *Id*. at 923-30. Here, however, the City admits that Count I is contractual—and the City seeks a contractual remedy. Am. Compl. ¶¶ 77-84; ECF No. 45 at 23, 25. So *Pacito*'s rationale confirms that Count I is subject to the Tucker Act.

The City also argues (at 6-7) that the forum-selection clause in the 2009 Third Amendment reflects the Government's understanding that the 2006 Cooperative Agreement was not subject to the Tucker Act. But that is irrelevant even if it were right. A contractual provision cannot confer subject-matter jurisdiction or waive sovereign immunity. *Cf. United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947) ("officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress").

Count I should be dismissed for lack of subject-matter jurisdiction.

3

### B.     Count II Is Equally Barred

Count II faces the same Tucker Act bar. The City labels Count II as a statutory claim under the National Underground Railroad Network to Freedom Act, 54 U.S.C. §§ 308301-04. But Count II's substance is contractual.

As explained in the Government's opening brief (at 4-7), the Act imposes no site-level content obligation that NPS may have violated by removing the exhibits. Without a statutory hook, the City must point to the cooperative agreements and other materials for the substance of Count II—as it does throughout the amended complaint. Am. Compl. ¶¶ 98-100 (relying on the 2009 Amendment for Count II); *see also* ECF No. 45 at 28-31 (relying on 2006 Cooperative Agreement for Count II); ECF No. 60 at 154:15-155:7 (similar). This confirms that Count II is not a statutory claim.

The City insists that the agreements "merely serve as evidence of the parties' shared understanding of the core components of the project." Opp. at 4. But if that were true then the City should be able to identify a specific provision or particular language in the Act that supports Count II. Yet it never does so. And calling the agreements mere "evidence" when they form the very basis for the claim is the kind of end-run around the Tucker Act that *Hahn*, 757 F.2d at 588, forbids.

The City also has no answer to the Government's distinction of *National Institutes of Public Health v. American Public Health Ass'n* (*NIPH*), 145 S. Ct. 2658 (2025). The Government's opening brief explained (at 5) that *NIPH* does not save Count II because that case involved a statutory framework imposing substantive and procedural requirements that existed independently of any contract. The Network to Freedom Act imposes no comparable requirements on NPS's site-level interpretive decisions. The City's opposition conspicuously fails to engage with this distinction at all.

4

It simply restates (at 4) that Count II is "undisputedly based in statute." But rhetoric is no substitute for reason.

Count II should be dismissed for lack of subject-matter jurisdiction.

## II.    Count III Fails Because 16 U.S.C. § 407n Does Not Reach the President's House

The Government's opening brief detailed (at 8-10) why 16 U.S.C. § 407n's mutual-agreement requirement is limited to Independence Square and does not cover the President's House or the broader Park. *See also* ECF No. 52 at 7-13 (Government's opposition to City's amended preliminary-injunction motion). Nothing in the City's opposition supports a different interpretation.

First, the City has no response to the Government's statutory arguments. As the Government's opening brief explained, the City's reading of § 407n collapses two distinct statutory terms—"Independence Hall National Historic Site" and "Independence National Historical Park"—into one, thus violating the surplusage and different-language/different-meaning canons. The City has no answer to either point. It simply ignores them. And the City admits (at 10) that the Government's reading of § 407n is "facially compelling, in that it relies on Section 407n's reference to the Historic Site."

Second, the City's sole argument on this point flouts § 407n's text and contravenes a separate principle of statutory interpretation. Rather than grapple with the statute's plain text, the City argues that the Site was "subsumed by Independence Park by operation of statute and agreement"—and insists that its statutory mutual-agreement right was thereby expanded to cover the entire Park. Opp. at 10. But nothing in the 1948 statute supports the notion that establishment of the Park would expand or

5

modify § 407n's operation with respect to the Site. And the City's statutory-scope-expands-with-time theory cannot be squared with the fundamental rule that "every statute's meaning is fixed at the time of enactment." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018).

Third, the 1950 Agreement has no bearing on § 407n's meaning. Contractual provisions cannot amend a statute. *E.g.*, *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd,* 569 U.S. 564 (2013). What's more, the 1950 Agreement does not support the City's assertion (at 11) that "the Historic Site designation was transitional." Article III(i) of the 1950 Agreement merely terminated *the parties'* prior designation agreement upon the Park's establishment. ECF No. 36-1 at 7. That had no effect on the Interior Department's 1943 definition and designation of the Site as a national historic site (8 Fed. Reg. 7,283 (dated May 14, 1943; published June 1, 1943))—and necessarily could not modify the statute.

Section 407n does not reach the President's House. NPS's removal of the exhibits thus cannot violate the statute and Count III fails as a matter of law.

## III. Counts II and IV Independently Fail Because There Is No Yardstick for Review

Counts II and IV allege that NPS's removal of the exhibits violated the APA; Count II frames the removal as arbitrary and capricious under the Network to Freedom Act and Count IV frames it as arbitrary and capricious under NPS's Foundation Document. As the Government explained in its opening brief (at 12-13), the APA claims require the City to identify a yardstick—in a statute, regulation, or binding policy—that provides a meaningful standard for review. *See also* ECF No. 52 at 21-25. Yet the City cannot identify such a yardstick. So these claims fail as a matter of law.

*1. The City offers nothing to save Count II.* In its opening brief, the Government (at 6-7) parsed the provisions of the Network to Freedom Act and explained that the Act contains no retention mandate, no site-specific interpretive requirement, and no prohibition on altering designated sites. The Government also flagged that Congress explicitly specified the limited circumstances where alterations to Network to Freedom property are restricted, and explained that this undermines the notion that there are additional implicit restrictions beyond the Act's text. *See* ECF No. 82 at 6-7 (citing 54 U.S.C. § 308303). The City identifies no statutory language to support this claim and has no response to the Government's structural argument. It just cites the entire Act and broadly declares that NPS "disregarded Congress's mandate to preserve and interpret Underground Railroad history" by removing the exhibits. Opp. at 9. But the City identifies no statutory language that requires NPS to display these particular exhibits or seek anyone's consent before altering a designated site. And the President's House remains designated as a Network to Freedom site—removal of the exhibits does not affect that designation.

*2. Count IV fails under the City's own articulation of the governing standard.* In Count IV, the City alleges that NPS violated the APA by departing from its own Foundation Document without a reasoned explanation. Opp. at 11-14. The Government's opening brief explained (at 10-13) why this claim fails: the Foundation Document does not create any enforceable rights and courts have consistently held that these kinds of agency documents are nonbinding and cannot support freestanding APA claims.

In response, the City insists that "[i]t is a basic principle of administrative law that an agency must adhere to the rules, policies, and positions it has adopted, even if it was not required to adopt them in the first place." Opp. at 12. But the three cases that

7

the City cites on this point illustrate why that basic principle is inapplicable here. The first two involved violations of agency *regulations*.[1] And while the third suggested that an agency's "general policy" might permit APA review, *INS v. Yang*, 519 U.S. 26, 32 (1996), its rationale does not help the City here. In *Yang*, the Supreme Court observed that "if [an agency] announces and follows—*by rule or by settled course of adjudication*—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) *could* constitute action [reviewable under the APA]." 519 U.S. at 32 (emphasis added). So *Yang* says that the agency must have adopted or applied the relevant policy with legally binding effect in order for it to support APA review. The Court did not hold or suggest that challenges based on nonbinding internal documents are cognizable under the APA.[2] And the City has not alleged that NPS applies the Foundation Document with legally binding effect.

The City insists that the Foundation Document nevertheless supplies "standards against which the Court can assess reasoned decision-making or the lack thereof." Opp. at 14. But that just restates the yardstick problem. APA review under *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983), requires a *legal*

---

[1]   *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (discussing agency's "alleged failure to exercise its own discretion, contrary to existing valid *regulations*" (emphasis added)); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010) (applying "the long-settled principle that *rules promulgated by a federal agency* that regulate the rights and interests of others are controlling upon the agency" (emphasis added)).

[2]   *Accord Pa. Dep't of Hum. Servs. v. United States*, 897 F.3d 497, 513 (3d Cir. 2018) (agency manual was not binding because it "was not published in the federal register or promulgated with public notice and comment" and agency did not intend to give it "binding force"); ECF No. 82 at 11 (citing more cases).

8

*standard* against which to measure the agency's actions. A document that disclaims and lacks legal effect cannot supply that standard. *Cf. Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 582-83 (3d Cir. 1979) ("The absence of fixed standards reflects an understanding that the type of decision made by the [agency] here is necessarily a matter of judgment and managerial discretion, and is by and large an inappropriate subject for judicial review.").

The Government's opening brief also explained (at 12) that *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016), and *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014), are distinguishable and do not support the notion that nonbinding internal guidance documents can support a freestanding APA claim. The City's opposition cites *Encino* in passing (at 7-8) but never mentions *Loving*—and it offers no response to the Government's arguments about why these cases are inapplicable here.

Counts II and IV should be dismissed.

## IV.    Count V Is Not Cognizable

Count V alleges that NPS's removal of the exhibits was ultra vires. The Government's opening brief explained (at 13-14) that this claim fails for three reasons: (1) there is no specific statutory prohibition to support it; (2) it is barred by the Tucker Act; and (3) if this Court concludes that the APA provides an available avenue for review then the ultra vires claim cannot proceed.

The City responds by repeating its arguments about the Tucker Act and 16 U.S.C. § 407n and insisting that dismissal of its ultra vires claim based on this Court's conclusion about available APA review is "premature at best." Opp. at 14-15. But as explained above, the City's efforts to avoid the Tucker Act and rewrite § 407n do not

9

withstand scrutiny. And this is the exact procedural point where dismissal is appropriate

if this Court determines that APA review is available. Count V should be dismissed.

## CONCLUSION

The Court should dismiss the City's amended complaint.

Dated: May 15, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone:   (215) 861-8200
Email:   gregory.indenberken@usdoj.gov

*Counsel for Defendants*

10

## CERTIFICATE OF SERVICE

I certify that on May 15, 2026, a true and correct copy of Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint was filed electronically via the Court's CM/ECF system and served via CM/ECF on all counsel of record.

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN