IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CITY OF PHILADELPHIA,

        Plaintiff,

    v.

DOUG BURGUM, SECRETARY OF THE
INTERIOR, *et al.*,

        Defendants.

Case No. 26-cv-434

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING
<u>PROPOSED INTERVENORS' STANDING</u>**

Defendants (the Government) submit this supplemental brief regarding Avenging

The Ancestors Coalition (ATAC) and The Black Journey: African-American Walking

Tour of Philadelphia's (TBJ) motion to intervene as plaintiffs (ECF No. 81).

**ARGUMENT**

Proposed Intervenors' motion should be denied for two independent reasons.

First, there is no longer a live action to intervene in. Last week, the Third Circuit vacated

the Court's preliminary injunction and remanded with instructions to dismiss Counts II

through V for lack of jurisdiction. *City of Philadelphia v. Sec'y U.S. Dep't of Interior*, \_\_\_

F.4th \_\_\_, 2026 WL 1755493, at \*13 (3d Cir. June 18, 2026). And as this Court previously

recognized, Count I is barred by the Tucker Act. ECF No. 53 at 24. Every claim brought

by the City is thus subject to dismissal. Yet intervention requires a live action—and none

remains here.

Second, Proposed Intervenors lack Article III standing. They do not own the

President's House or its exhibits, and they identify no statute, contract, or property right

that lets them dictate what the Government displays there. The Third Circuit has now held that the City—which helped fund and design the exhibits—has no such right, and Proposed Intervenors' connection to the Site is weaker still. Their other theories of injury fail too. An advocacy organization cannot spend its way into standing by opposing government action. A tour company has no protected interest in content that it does not control. And perceived offense at the Government's message is neither a cognizable injury nor a harm that a federal court can redress. The Court should deny intervention.

## I.    No Live Action Remains for Proposed Intervenors to Join

"Intervention is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention." *Unalachtigo Band of Nanticoke Lenni Lenape Nation v. Corzine*, 606 F.3d 126, 130 (3d Cir. 2010) (cleaned up). Here, the City brought five claims and each one is jurisdictionally barred. So there is no live case to intervene in.

Start with Count I. The City alleged that the Government breached the 1950 Agreement and the 2006 Cooperative Agreement. ECF No. 44 ¶¶ 78-84. As this Court observed in ruling on the City's motion for a preliminary injunction, that claim "requests specific performance" and "undeniably sounds in contract." ECF No. 53 at 24. The Court recognized that "the Tucker Act impliedly forbids the City from obtaining relief" on that claim. *Id.* Based on that rationale, the Court lacks subject-matter jurisdiction over Count I, so dismissal of that Count is required.[1]

---

[1]    Although the Third Circuit held that the City had *standing* based on its contractual-violations theory, the court further observed that "the City's underlying statutory and contract claims [do not] have merit." *City of Philadelphia*, 2026 WL 1755493, at *10.

Counts II through V fare no better. As the Third Circuit has now held, the APA does not authorize review of Counts II through V because the Government's removal of the exhibits was neither "agency action" nor "final." *City of Philadelphia*, 2026 WL 1755493, at *11-13. (And the Third Circuit held that Count V also failed as a matter of law in any event. *Id.* at *11 n.8.) The Third Circuit thus vacated this Court's preliminary injunction and remanded "with instructions to dismiss Counts II, III, IV, and V for lack of jurisdiction." *Id.* at *13. Counts II through V must thus be dismissed once the mandate issues.

That leaves nothing to intervene in. Proposed Intervenors cannot revive the City's barred claims, and they cannot interject new claims into a case that the Court lacks the power to hear. Thus, as the Government explained in its intervention opposition (ECF No. 86), if Proposed Intervenors want to press their claims, the proper course is for them to file a new lawsuit.

## II.    Proposed Intervenors Lack Article III Standing in Any Event

Even if a live case remained, Proposed Intervenors lack Article III standing to join as plaintiffs.

A litigant who intervenes as a plaintiff must have Article III standing. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017). Standing must exist "for each claim" and "for each form of relief that is sought." *Id.* at 439 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). And "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Id.* Proposed Intervenors thus bear the burden of establishing the familiar elements of standing: an injury in fact that is concrete, particularized, and actual or imminent; fairly traceable to the challenged conduct; and redressable by a

favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). They do not satisfy that burden.

### A. No Proposed Intervenor Has Suffered an Injury in Fact

#### 1. Proposed Intervenors have no legally protected interest in the content of exhibits they do not own or control.

An injury in fact requires the "invasion of a legally protected interest." *Id.* at 560. Proposed Intervenors do not allege such an interest. They do not own the President's House. They do not own the exhibits. And they point to no statute, contract, or property right that entitles them to control what NPS displays at the Site.

The Third Circuit's decision confirms that no such interest exists. The court held that the City—which helped fund and design the exhibits—"does not have any statutory, property, or contractual rights that empower it to curate the exhibits in the President's House." *City of Philadelphia*, 2026 WL 1755493, at *13; *see also id.* at *7-10 (rejecting the City's statutory and contractual theories). Proposed Intervenors' connection to the Site is thinner still. ATAC advocated for the exhibits and uses the Site for programming; TBJ visits it on tours. Neither has any greater claim than the City to dictate the Site's content—and the City has none. An asserted interest in how the federal government presents history at a Site that one neither owns nor controls is not a legally protected interest. It is a generalized grievance shared with every member of the public who holds the same view. Yet an "undifferentiated, generalized grievance about the conduct of government" does not qualify as an injury in fact. *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

#### 2. ATAC cannot spend its way into standing.

ATAC's principal theory of injury contends that NPS's removal of the exhibits forced ATAC to divert resources—holding meetings and rallies, explaining the exhibits'

significance, and suspending other advocacy—and so frustrated its mission. ECF No. 102 at 3-5. But as the Supreme Court explained in *FDA v. Alliance for Hippocratic Medicine* (*AHM*), "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. 367, 394 (2024). "An organization cannot manufacture its own standing in that way." *Id.* Otherwise "all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.*

ATAC's allegations are precisely the kind that *AHM* held insufficient. ATAC is an advocacy organization and the activities that it identifies are efforts to oppose the exhibits' removal: it "met at least twice weekly to organize a response" to the orders, held rallies, ECF No. 81-3 ¶¶ 49-50, and allegedly spent resources "explaining the historical significance" of the exhibits to its members and the public, ECF No. 102 at 4. But spending resources to oppose government action is the exact theory that *AHM* rejected.[2] ATAC's only other asserted harm is that the removal undercuts the historical narrative that it has long promoted. ECF No. 102 at 4-6. But that is "simply a setback to [its] abstract social interests," which does not suffice for standing. *AHM*, 602 U.S. at 394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). And *Havens* does not help ATAC. There, the defendant's discriminatory steering directly impaired the

---

[2]   After *AHM*, numerous courts of appeals—including the Third Circuit—have similarly rejected such a standing theory. *See, e.g.*, *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 469 (3d Cir. 2025); *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 167 F.4th 605, 616-19 (2d Cir. 2026); *D.C. ex rel. Chaplick v. Fairfax Cnty. Sch. Bd.*, 171 F.4th 255, 267 (4th Cir. 2026).

counseling and referral services that the organization provided to the public. *Havens*, 455 U.S. at 379. ATAC does not stand in the same shoes as that organization because the Government's decision about what to display at the President's House impairs no service that ATAC provides to anyone. Indeed, ATAC remains free to gather at the President's House, commemorate the people who were enslaved there, and educate the public about them. ATAC's mere objection to removal of the exhibits does not satisfy Article III.

**3.    The Black Journey's asserted business harms are not cognizable injuries.**

The Black Journey, a walking-tour company, asserts that removal of the exhibits harmed its business because it paused tours to retrain guides, must revise its scripts and audio tour, and may lose tour revenue around the Nation's 250th anniversary. ECF No. 102 at 4-5; ECF No. 81-4 ¶¶ 20-35. These asserted harms do not qualify as an injury in fact.

As explained above, TBJ has no legally protected interest in the content of the President's House. TBJ built its tours around exhibits at a federal site that it does not own or control. The Government's authority over those exhibits and their content does not yield to a tour company's business plan. And a change to content that the company never had a right to is not an invasion of any interest of that company.

TBJ's reliance (ECF No. 102 at 3) on *AHM*'s recognition that an organization may have standing when it challenges action that "directly affect[s] and interfere[s] with [its] core business activities," 602 U.S. at 395, does not change the analysis. *AHM* also makes clear that an organization is not injured by the loss of government conduct to which it has no entitlement. *Id*. at 395-96. TBJ's tours may use the interpretive panels, but TBJ

points to no statute, contract, or other source entitling it to any particular content at the President's House. And a change to content to which TBJ has no right does not invade a legally protected interest—whatever its effect on TBJ's tours.

TBJ's underlying theory of harm from "erasure of history" is also contradicted by the Third Circuit's decision. As the Third Circuit observed, NPS's planned replacement panels "are full of historical context," including regarding the nine slaves who lived at the President's House, the slave trade, and the abolition movement. *City of Philadelphia*, 2026 WL 1755493, at *11-13. So the premise of TBJ's theory—that the Government is erasing history from the Site—is mistaken, and TBJ can continue its tours there. *Cf. id.* at *7 n.7 (questioning how asserted harm to the City's "ability to 'tell its history'" qualifies as a cognizable Article III injury).

### 4.    Offense at the Government's message is not a cognizable injury.

ATAC also asserts a dignitary injury on behalf of its members—that removal of the exhibits was "dehumanizing" and "send[s] a message that Black history" is "unimportant." ECF No. 102 at 6-7; ECF No. 81-3 ¶¶ 53-55. But perceived offense at the Government's conduct, however deeply felt, is not an Article III injury. *See, e.g., Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) ("the psychological consequence presumably produced by observation of conduct with which one disagrees" does not qualify as injury in fact). A perceived injury to dignity, untethered to any differential treatment, also lacks the "close relationship" to a traditionally recognized harm that Article III concreteness requires. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

The Third Circuit confronted a similar claim in *Conference of Presidents of Major Italian American Organizations, Inc. v. City of Philadelphia*, No. 22-1116, 2023 WL 1069704 (3d Cir. Jan. 27, 2023). There, Italian-American organizations challenged the City of Philadelphia's decision to rename Columbus Day as Indigenous Peoples' Day, alleging that the renaming was a discriminatory classification that injured them. But the Third Circuit affirmed the district court's dismissal for lack of standing. The plaintiffs alleged no unequal treatment, only offense at the City's message—yet "[t]he gravamen of an equal protection claim is differential government treatment, not differential government messaging." *Conf. of Presidents*, 2023 WL 1069704, at *2 (quoting *Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142, 160 (3d Cir. 2019)). Their "remedy," the court held, "is political, not legal." *Id.*

So too here. Proposed Intervenors do not allege that the Government treats them—or anyone else—unequally at the President's House. In fact, they allege the opposite: that "people of all races visiting the PH / Slavery Memorial encounter [the] exhibits" "seemingly 'in an identical manner.'" ECF No. 81-2 ¶ 241. So their grievance is with the Government's perceived message, not any differential treatment. Like the plaintiffs in *Conference of Presidents*, Proposed Intervenors' remedy lies in the political process—not in federal court.

*Conference of Presidents* also illustrates why ATAC's reliance (ECF No. 102 at 6) on *Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015), is misplaced. There, the plaintiffs alleged that they were personally subjected to a discriminatory surveillance program. *Hassan*, 804 F.3d at 284, 291-92. So "the discriminatory classification qualified as an injury-in-fact because it resulted in unequal treatment." *Conf. of Presidents*, 2023 WL 1069704, at *2 (citing *Hassan*, 804 F.3d at 289). But ATAC's

members are not subjected to any program or differential treatment; they object to the Government's content decision—which applies to everyone who visits the President's House.

ATAC's associational-standing theory fails for the same reason. An association has standing to sue on its members' behalf only if a member would have standing in his own right. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, no ATAC member has standing because nobody is treated unequally at the Site.

### B.    Proposed Intervenors Lack Standing to Seek Additional Relief Against the Executive Order and the Secretary's Order

Beyond restoration, Proposed Intervenors seek relief that the City never sought: a declaration that Executive Order 14253 and Secretary's Order 3431 are unlawful and an injunction barring the Government from enforcing or implementing them. ECF No. 81-2 at 59-60. Proposed Intervenors must establish standing for that relief in particular. *Town of Chester*, 581 U.S. at 440. They offer two theories. ECF No. 102 at 10-11. Neither works.

*First*, Proposed Intervenors contend that the orders caused the removal of the exhibits, so their removal-based injuries—spent resources, frustration of mission, and dignitary harm to ATAC's members—trace to the orders. ECF No. 102 at 10. But even if those injuries were cognizable, enjoining the orders would not redress them because an order halting enforcement of the directives would not restore the exhibits. Only restoration would. (And for the reasons explained in Sections II.A.1 and II.C, Proposed Intervenors cannot obtain restoration.) "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Nor do Proposed Intervenors have a stake in how the orders operate beyond the President's House. The orders govern federal sites nationwide, yet

Proposed Intervenors do not allege that any other site they use has been altered. Their objection to how the orders might apply elsewhere is a generalized grievance, not the particularized injury that Article III demands. *See Lujan*, 504 U.S. at 560 & n.1.

*Second*, Proposed Intervenors contend that the orders injure ATAC's members "standing alone," by "singling out" and "denigrating" the history those members work to preserve. ECF No. 102 at 10-11. That is the same dignitary injury addressed above, and it fails for the same reason: it depends on the orders' perceived message, not on any unequal treatment of Proposed Intervenors or their members. The orders apply to every visitor and every organization alike. Proposed Intervenors identify no actual differential treatment, only a perceived message that they find offensive. But that is not a cognizable injury. *See Valley Forge*, 454 U.S. at 485. Even if it were, an injunction could not undo a message that was already delivered—because prospective relief redresses only a threatened future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

### C.        Proposed Intervenors Cannot Rely on the City's Standing

Proposed Intervenors argue that they "need not establish independent standing to seek the same relief as the City." ECF No. 102 at 1-2. Although that general principle of intervenor standing is accurate, it no longer applies here. It presupposes the presence of a plaintiff who has standing and is actively pressing the claim that seeks identical relief. *See Town of Chester*, 581 U.S. at 439 ("For all relief sought, there must be a litigant with standing ...."). But that predicate is gone here. As explained above, the City's claims are all subject to dismissal. So Proposed Intervenors cannot piggyback on the City's standing. They must stand on their own—and as explained above, they cannot.

### CONCLUSION

The Court should deny ATAC and TBJ's motion to intervene.

Dated:  June 22, 2026                      Respectfully submitted,

BRETT A. SHUMATE                            DAVID METCALF
Assistant Attorney General                  United States Attorney
Civil Division

                                            _/s/ Gregory B. David_
MICHAEL VELCHIK                             GREGORY B. DAVID
Senior Counsel to the Assistant             Assistant United States Attorney
Attorney General                            Chief, Civil Division

                                            _/s/ Gregory B. in den Berken_
                                            GREGORY B. IN DEN BERKEN
                                            Assistant United States Attorney
                                            Eastern District of Pennsylvania
                                            615 Chestnut Street, Suite 1250
                                            Philadelphia, PA 19106
                                            Phone:    (215) 861-8200
                                            Email:    gregory.indenberken@usdoj.gov

                    *Counsel for Defendants*

11

## CERTIFICATE OF SERVICE

I certify that on June 22, 2026, a true and correct copy of Defendants'

Supplemental Brief Regarding Proposed Intervenors' Standing was filed electronically

via the Court's CM/ECF system and served via CM/ECF on all counsel of record.

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN