IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CITY OF PHILADELPHIA,

Plaintiff,

v.

DOUG BURGUM, SECRETARY OF THE INTERIOR, *et al.*,

Defendants.

Case No. 26-cv-434

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. Proposed Count VI Is Foreclosed by the Third Circuit's Mandate ........ 6

II. Proposed Count I Is Barred by the Tucker Act and the Third Circuit's Mandate ........ 8

A. The Tucker Act Bars Count I ........ 9

B. The Third Circuit's Mandate Independently Forecloses Count I ........ 11

III. The Mandate Precludes the City's Proposed Requests for Restoration and Site-Specific Injunctive and Declaratory Relief ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) .......... 9

*Anchorage v. United States*,
119 Fed. Cl. 709 (2015) .......... 11

*Arizona v. California*,
460 U.S. 605 (1983) .......... 13

*Bankers Tr. Co. v. Bethlehem Steel Corp.*,
761 F.2d 943 (3d Cir. 1985) .......... 4, 5

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 2

*City of Philadelphia v. Sec'y U.S. Dep't of Interior*,
179 F.4th 169 (3d Cir. 2026) .......... *passim*

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) .......... 4

*Hahn v. United States*,
757 F.2d 581 (3d Cir. 1985) .......... 9

*In re United States*,
No. 24-684, 2024 WL 5102489 (9th Cir. May 1, 2024) .......... 7

*Kilbarr Corp. v. Bus. Sys. Inc., B.V.*,
990 F.2d 83 (3d Cir. 1993) .......... 4, 15

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002) .......... 4, 11

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) .......... 9

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) .......... 9

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*,
180 F.4th 348 (1st Cir. 2026) .......... 6

*National Parks Conservation Ass'n v. U.S. Department of the Interior*,
No. 26-cv-10877, 2026 WL 1601790 (D. Mass. June 4, 2026) .......... 5

*Pacito v. Trump*,
169 F.4th 895 (9th Cir. 2026) .......... 10, 11

*Sea-Land Serv., Inc. v. Brown*,
600 F.2d 429 (3d Cir. 1979) .......... 9

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000) .......... 4

*Woods v. Interstate Realty Co.*,
337 U.S. 535 (1949) .......... 12

**STATUTES**

5 U.S.C. § 551(13) .......... 7

5 U.S.C. § 702 .......... 9

5 U.S.C. § 706(2) .......... 14

8 U.S.C. § 1522 .......... 10

16 U.S.C. § 407n .......... 2, 10

28 U.S.C. § 1346(a)(2) .......... 9

28 U.S.C. § 1491(a)(1) .......... 9

**RULES**

Fed. R. Civ. P. 12(g)(2) .......... 6

Fed. R. Civ. P. 15(a)(2) .......... 4

## INTRODUCTION

The Third Circuit has already decided the crux of this case. The court held that the City of Philadelphia "does not have any statutory, property, or contractual rights that empower it to curate the exhibits in the President's House." *City of Philadelphia v. Sec'y U.S. Dep't of Interior*, 179 F.4th 169, 186 (3d Cir. 2026). It further held that the National Park Service's removal of the exhibits was neither "agency action" nor "final." And it remanded with instructions to dismiss Counts II through V for lack of jurisdiction and "to dispose of Count I consistent with this opinion." *Id.* Although this Court dismissed Counts II through V (ECF No. 109), Count I remains subject to the Government's pending motion to dismiss (ECF No. 82). The City now seeks leave to file a second amended complaint to try to salvage its case.

None of the City's six revamped claims passes muster, and the Government opposes leave to amend in full—but the deficiencies in Counts II through V of the City's Proposed Second Amended Complaint (PSAC) (ECF No. 119-3) are better addressed in a subsequent Rule 12 motion if the Court permits amendment. The Government will instead focus here on three aspects of the City's proposed pleading that are squarely foreclosed. Specifically, proposed Counts VI and I and most of the City's requested relief simply re-plead what the Third Circuit and this Court have already rejected.

At a minimum, the Court should thus deny leave to amend as to proposed Count I, Count VI, and the City's requests for site-specific declaratory relief and restoration/injunctive relief. The Court should also grant the Government's motion to dismiss Count I of the Amended Complaint (ECF No. 82).

## BACKGROUND

On January 22, 2026, NPS removed interpretive panels and videos from the President's House Site in Independence National Historical Park. ECF No. 27-1 ¶¶ 4-8. The City sued the same day. Its Amended Complaint asserted five counts. ECF No. 44. Count I alleged that NPS breached the 1950 Agreement and the 2006 Cooperative Agreement (as amended). *Id.* ¶¶ 77-84. Counts II through V alleged that the removal violated the APA or was ultra vires. Count II relied on the National Underground Railroad Network to Freedom Act. *Id.* ¶¶ 85-101.

This Court granted a preliminary injunction based on Counts II through V but declined to rely on Count I. ECF Nos. 53, 54. The Court recognized that "the Tucker Act impliedly forbids the City from obtaining relief" on Count I because that claim "requests specific performance" and "undeniably sounds in contract." ECF No. 53 at 24. The Government then moved to dismiss the Amended Complaint. ECF No. 82.

The Third Circuit subsequently vacated this Court's preliminary injunction. *See Philadelphia*, 179 F.4th at 186. It held that the City had standing because "it alleges that NPS violated its residual contractual duties" regarding the Site. *Id.* at 179. But it cautioned that the City's "underlying statutory and contract claims" lack merit. *Id.* at 183. It further concluded that 16 U.S.C. § 407n does not reach the President's House; that the 1950 Agreement "imposes no obligations on NPS with respect to the Park writ large or the President's House in particular"; and that the 2006 Cooperative Agreement expired in 2010 and does not require NPS to keep the exhibits in place. *Id.* at 177-83.

The Third Circuit further held that NPS's removal of the exhibits was neither "agency action" nor "final"—and that the removal was thus not reviewable under the APA. *Id.* at 183-86. Counts III and IV also failed the second prong of *Bennett v. Spear*,

520 U.S. 154, 177-78 (1997). The City had no right to curate the exhibits (Count III), and the 2017 Foundation Document imposed no enforceable obligation on NPS (Count IV). *Philadelphia*, 179 F.4th at 186. The Third Circuit thus vacated the preliminary injunction and remanded "with instructions to dismiss Counts II, III, IV, and V for lack of jurisdiction and to dispose of Count I consistent with this opinion." *Id.*[1]

On July 3, 2026, the Third Circuit issued its mandate to permit NPS's replacement of the exhibits to go forward. *See* ECF No. 108. The City moved for reconsideration and to recall the mandate, but the Third Circuit denied those requests. *See Philadelphia*, No. 26-1348, Docs. 117-120 (3d Cir.). The court explained that its holding "equate[d] to an utter lack of likelihood of success on the merits of [Counts II through V] to support the preliminary injunction issued, including any continued application of it." *Philadelphia*, No. 26-1348, Doc. 120 at 2 n.1 (3d Cir. July 10, 2026). This Court then dismissed Counts II through V for lack of jurisdiction. ECF No. 109. NPS thereafter installed new exhibits at the Site. *See* PSAC ¶ 112. And the Third Circuit denied the City's petition for rehearing. *Philadelphia*, No. 26-1348, Doc. 122 (3d Cir. Aug. 18, 2026).

After a status conference and letter briefs, the Court set an October 23 deadline for any motion for leave to amend. ECF Nos. 110, 113-115. It deferred ruling on the Government's motion to dismiss Count I until that deadline passed. ECF No. 115 at 2.

---

[1] The City asserts that the Third Circuit "did not question that the NPS's removal – when performed – met" *Bennett*'s test. ECF No. 119 at 2; ECF No. 119-2 at 2. That is wrong. The Third Circuit held that the removal was not "agency action" at all. *Philadelphia*, 179 F.4th at 183-84. It explicitly rejected this Court's finality ruling. *Id.* at 185-86 ("[W]e cannot agree with the District Court that the exhibit removal six months ago was NPS's last word on the matter."). And it held that Counts III and IV failed *Bennett*'s second prong without regard to timing. *Id.* at 186.

The City timely moved for leave to file a second amended complaint. ECF No. 119. The proposed second amended complaint (ECF No. 119-3) asserts six counts. Count I again alleges that NPS acted "in derogation of" the 1950 and 2006 Agreements. PSAC ¶¶ 119-27. Counts II through V now challenge Secretary's Order 3431 under the APA as arbitrary and capricious and as contrary to the National Park Service Centennial Act, the National Park Service Organic Act, and the National Parks Omnibus Management Act. *Id.* ¶¶ 128-71. Count VI again challenges the removal of the exhibits under the APA as contrary to the Network to Freedom Act. *Id.* ¶¶ 172-89. The PSAC seeks declaratory relief, vacatur of the Secretary's Order, restoration of the Site to its January 21, 2026 condition, and a permanent injunction. *Id.* ¶ 8; *id.* at 39-40.

**LEGAL STANDARD**

A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court may deny leave as futile if the amended complaint would fail to state a claim under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The same standard governs a facial challenge to subject-matter jurisdiction. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A court also "has discretion to deny" leave where the plaintiff "was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002).

On remand, the appellate court's mandate frames this inquiry. A district court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Kilbarr Corp. v. Bus. Sys. Inc., B.V.*, 990 F.2d 83, 87-88 (3d Cir. 1993) (quoting *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)). By extension, the district court may

consider only "those issues not expressly or implicitly disposed of by the appellate decision." *Bankers Tr.*, 761 F.2d at 950 (citing cases). So an amendment that would be inconsistent with the mandate is futile.

## ARGUMENT

The City seeks leave to amend to assert six counts. This opposition focuses on the parts of the PSAC that most plainly re-plead claims and relief that the Third Circuit and this Court have already rejected: Count VI, Count I, and the City's requests for site-specific relief. Those aspects re-plead what has already been adjudicated in this case, so the mandate rule requires disposing of them now.

But Counts II through V fare no better. They are the City's old challenge to the removal, re-aimed at the Secretary's Order. The City's asserted injury is the same: the loss of exhibits at one site. So is the relief that the City seeks: restoration of the exhibits. PSAC ¶ 8; *id.* at 39-40. But changing the target does not change the result. The Third Circuit held that NPS's curatorial decisions at the President's House are not "agency action" and that the City has no right to curate the exhibits there. *Philadelphia*, 179 F.4th at 183-84, 186. Those holdings bind this Court as precedent whatever count the City pleads. They leave the City without standing to attack a DOI-wide order whose vacatur would not put a single panel back on the wall. The Order is not final agency action in any event, and the statutes the City invokes supply no law to apply.[2] The

---

[2] The City's reliance on *National Parks Conservation Ass'n v. U.S. Department of the Interior*, No. 26-cv-10877, 2026 WL 1601790 (D. Mass. June 4, 2026), is misplaced. *See* ECF No. 119-2 at 3. In *NPCA*, the district court reasoned that the Order qualified as final agency action because it "imposes legal obligations on Land Management Bureau personnel, who must review interpretive materials at park sites, post QR codes, and remove purportedly violative materials." 2026 WL 1601790, at *9. But the Third Circuit held in this case that "a decision to remove exhibits from a National Park site does not

Government thus opposes leave to amend as to Counts II through V as well, but does not brief those counts in full here because their defects are best resolved together, on a Rule 12 motion directed at an operative pleading. The Government does not concede or waive any arguments or defenses by reserving these matters. *See, e.g.*, Fed. R. Civ. P. 12(g)(2), (h)(2)-(3).

## I. Proposed Count VI Is Foreclosed by the Third Circuit's Mandate

Proposed Count VI challenges the January 2026 removal of the exhibits under the Network to Freedom Act in nearly the same language as dismissed Count II. *Compare* PSAC ¶¶ 172-89, *with* Am. Compl. ¶¶ 85-101. Both counts allege that the removal defeated Congress's purpose in preserving Underground Railroad sites. PSAC ¶ 174; Am. Compl. ¶ 86. And both allege that "[t]he removal of artwork and informational displays at the President's House site referencing slavery constitutes final agency action subject to review by this Court." PSAC ¶ 175; Am. Compl. ¶ 87. The only material change comes in the last paragraph, where the City now asks the Court to set aside "the Secretary's Order." PSAC ¶ 189.

The Third Circuit rejected the very allegation that the City repeats. It held that removing the exhibits did not qualify as "agency action" and, independently, that the removal was not "final." *Philadelphia*, 179 F.4th at 183-86. It therefore directed this Court to dismiss Count II for lack of jurisdiction, and this Court did so. *Id.* at 186; ECF No. 109. The City cannot revive that claim by assigning it a new number and changing

---

satisfy any of the definitions" of agency action, and that a claim based on internal NPS planning guidance "does not involve NPS's legal obligations" and thus does not qualify as final agency action. *Philadelphia*, 179 F.4th at 183, 186. That binding precedent controls here. (And the First Circuit has stayed *NPCA*'s injunction pending appeal. *Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 180 F.4th 348, 354 (1st Cir. 2026).)

the last paragraph of its pleading. *Cf. In re United States*, No. 24-684, 2024 WL 5102489, at *2 (9th Cir. May 1, 2024) (granting mandamus after the district court allowed amendment because "[n]either the mandate's letter nor its spirit left room for amendment").

Subsequent events do not change anything. The City may argue that NPS's July 2026 installation of new panels completed NPS's decisionmaking and thus cured the finality problem. But the Third Circuit's agency-action holding did not turn on timing. The APA defines "agency action" to include an agency "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). As the Third Circuit explained, "a decision to remove exhibits from a National Park site does not satisfy any of the definitions." *Philadelphia*, 179 F.4th at 183. Nor is it "'equivalent' to a 'rule, order, license, sanction, [or] relief.'" *Id.* at 184. That was true in January and it remains true now.[3] As the City itself told the Third Circuit, the opinion rested on "two independent threshold grounds," and the finality ruling was an "alternative holding." *Philadelphia*, No. 26-1348, Doc. 121 (City's Rehearing Petition) at 6, 14 (3d Cir. Aug. 3, 2026). The agency-action holding thus stands on its own.

The addition to the claim's last paragraph (challenging the Secretary's Order) does not salvage the claim either. Count VI does not allege that anything in the Secretary's Order violates the Network to Freedom Act. Its allegations are directed at the removal of exhibits at the President's House Site. PSAC ¶¶ 174-75, 186-88. To the extent

[3] Reframing Count VI as a challenge to installation of the replacement panels would lead to the same result. Selecting and installing exhibits is the same kind of curatorial decision as removing them. The Third Circuit considered the replacement designs that NPS had posted online. The panel specifically discussed how they tell the story of the nine people Washington enslaved at the President's House. *Philadelphia*, 179 F.4th at 184-86.

the City means for Count VI to challenge the Secretary's Order itself, the count adds nothing to Count II, which already challenges the Order as arbitrary and capricious. *Id.* ¶¶ 128-39.

Nor does footnote 9 in the Third Circuit's opinion save Count VI. There, the court observed that the Network to Freedom Act bears on NPS's legal obligations for purposes of *Bennett*'s second prong. *Philadelphia*, 179 F.4th at 186 n.9. But the court did not suggest that this made the old Count II reviewable. It held the opposite: the removal was neither agency action nor final, so Count II had to be dismissed. *Id.* at 184-86. Footnote 9 explained only why Count II was not among the claims that also failed *Bennett*'s second prong. It did not leave a path around the court's agency-action and finality holdings.

## II. Proposed Count I Is Barred by the Tucker Act and the Third Circuit's Mandate

The Amended Complaint alleged that NPS "breached" the 1950 and 2006 Agreements. Am. Compl. ¶ 80. Proposed Count I alleges that NPS acted "in derogation of" those same Agreements by changing the exhibits and their interpretive focus without consulting the City. PSAC ¶¶ 122-25; *compare* Am. Compl. ¶¶ 80-82. The City still disclaims monetary damage and insists that "[t]he only remedy to which the City is entitled is equitable." PSAC ¶ 126; *compare* Am. Compl. ¶ 83. The City now adds that NPS "functionally terminat[ed]" the Agreements. PSAC ¶ 122. But a claim that the Government wrongfully terminated an agreement is still a claim based on the agreement.

Count I thus fails for two independent reasons—it is barred by the Tucker Act and the Third Circuit already rejected its underlying premise.

### A. The Tucker Act Bars Count I

The APA waives sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. But the waiver does not authorize relief if another statute "expressly or impliedly forbids the relief which is sought." *Id.* That limit "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). The Tucker Act is one such statute. It gives the Court of Federal Claims jurisdiction over claims based on a contract with the United States, 28 U.S.C. § 1491(a)(1), and gives district courts concurrent jurisdiction over monetary claims "not exceeding $10,000 in amount," *id.* § 1346(a)(2). A plaintiff cannot use the APA to bring a contract action that the Tucker Act would otherwise bar. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004).

The Third Circuit applies that rule to requests for specific performance. Because plaintiffs "could not get specific performance on a government contract" before Congress amended § 702, they cannot obtain "similar relief now in the district courts by virtue of the APA amendments." *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 433 (3d Cir. 1979); *see also Hahn v. United States*, 757 F.2d 581, 588 (3d Cir. 1985) (plaintiff may not invoke § 702 "to circumvent limitations on district court jurisdiction created by the Tucker Act").

To decide whether a claim is contractual, courts examine "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). This Court applied that test at the preliminary-injunction stage and concluded that Count I

"undeniably sounds in contract." ECF No. 53 at 23-24. The proposed amendment changes neither the source of the City's rights nor the substance of the relief it seeks.

*The source of the rights.* Count I invokes § 702 to waive immunity, but the duty the City seeks to enforce comes from the Agreements. PSAC ¶¶ 119-27. The statute on which the City previously grounded its right to mutual agreement, 16 U.S.C. § 407n, "does not apply to the President's House site." *Philadelphia*, 179 F.4th at 184 n.8. The City even agreed at oral argument that it "has a contract-backed expectation." *Id.* at 178 (citing oral argument).

*The type of relief.* Although Count I now asks the Court to set aside the Secretary's Order, PSAC ¶ 127, the City still seeks contractual relief—restoration of the Site "to its status as of January 21, 2026." *Id.* at 39 (Relief Sought ¶ B). On Count I's theory, that order would require the Government to perform the Agreements as the City reads them. The City previously admitted as much when it described the relief on its contract claims as "solely limited to non-monetary specific performance." ECF No. 45 at 25.

*Pacito v. Trump.* The City has relied on *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026), to argue that its cooperative agreements fall outside the Tucker Act. ECF No. 97-2 at 4-7; ECF No. 114 at 2. But *Pacito* is not binding, and the two features that took the claims outside the Tucker Act there are missing here. The plaintiffs' rights flowed in part from the statute that created the refugee resettlement program, 8 U.S.C. § 1522, and they did "not pursue specific performance . . . in a manner that sounds in contract." 169 F.4th at 925-27, 929. Here the City seeks specific performance of a duty it can trace only to the Agreements.

Nor does the "cooperative agreement" label control. *Pacito* called the agency's

choice of label "persuasive but not conclusive" and cited a case in which the "reciprocal nature of [an] Agreement" made it "an express contract and not a cooperative agreement." *Id.* at 926 (quoting *Anchorage v. United States*, 119 Fed. Cl. 709, 713 (2015)). Here, the City pleads that the parties intended "to be legally bound" and "expressly waive[d] the defense of lack of consideration." PSAC ¶ 80. Consistent with that bargain, the City donated the completed Project to NPS, which took ownership. *Philadelphia*, 179 F.4th at 174. If the Agreements bind NPS as the City contends, the City cannot compel their performance in this Court. If they do not, Count I has no source of rights at all.

This Court identified the Tucker Act problem in February, and the Government moved to dismiss on that ground in April. ECF No. 53 at 24; ECF No. 82 at 3-4. The City thus had notice of the defect and has proposed no amendment that cures it. That is reason to deny leave under the very rule the City invokes. *Krantz*, 305 F.3d at 144; ECF No. 119-2 at 4.

### B. The Third Circuit's Mandate Independently Forecloses Count I

Even if the Court had jurisdiction, proposed Count I would still fail because the Third Circuit has already rejected its contractual premises.

The Third Circuit addressed each agreement that Count I invokes. The 1950 Agreement "was entered into under § 407n and is directed at Independence Square—not the President's House." *Philadelphia*, 179 F.4th at 182. It "imposes no obligations on NPS with respect to the Park writ large or the President's House in particular." *Id.* at 183. As for the 2006 Cooperative Agreement and its amendments, those "expired in 2010." *Id.* NPS owns the President's House, and the City "waive[d] any claim or right to any property interest, including use rights." *Id.* (citation omitted). The survival clause in

the 2006 Cooperative Agreement does not change anything; NPS's duty to "maintain" the Site "is better understood as a general management obligation that accompanies ownership, not a promise that the exhibits will forever remain in place regardless of the owner's wishes." *Id.* And as the Third Circuit stressed, its conclusion that the City had standing should not be mistaken "for a conclusion that the City's underlying statutory and contract claims have merit. They do not." *Id.*

Those rulings bind this Court for three reasons.

*First*, the Third Circuit relied on those rulings to decide the appeal. In holding that Count III failed *Bennett*'s second prong, the court reasoned that, "[a]s discussed, the City does not have any statutory, property, or contractual rights that empower it to curate the exhibits in the President's House, so Count III does not involve the City's legal rights or obligations." *Id.* at 186. That was an alternative ground for the court's disposition. *Id.* ("That Counts III and IV do not satisfy the second *Bennett* condition provides an additional reason we cannot consider these two claims."). And "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949).

*Second*, the Third Circuit directed this Court "to dispose of Count I consistent with this opinion." *Philadelphia*, 179 F.4th at 186. The City says the Third Circuit "did not address the viability of Count I." ECF No. 114 at 2 n.1. Yes, Count I itself was beyond the Third Circuit's appellate jurisdiction because this Court had not yet ruled on it. *Philadelphia*, 179 F.4th at 177 n.5. But the court construed the Agreements in deciding Count III. Its conclusion that the Agreements gave the City no right to curate the exhibits supplied an independent ground for rejecting that count. *Id.* at 186. This Court cannot carry out the panel's instruction on Count I by giving those same Agreements a

different meaning on remand.

*Third*, the law-of-the-case doctrine points the same way. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). What the Agreements require is the same issue whether it arises under old Count III, old Count I, or new Count I.

The PSAC's new allegations do not change the analysis. The PSAC asserts that NPS "functionally terminat[ed]" the Agreements. PSAC ¶ 122. But as the Third Circuit construed them, the Agreements impose no obligation on NPS to keep the exhibits in place. Changing the exhibits thus could not "terminate" the Agreements, functionally or otherwise. The PSAC also relies on the Project Development Plan and the 2015 intellectual-property assignments. PSAC ¶¶ 73, 84-88. But the Third Circuit considered the Plan and observed that it "does not discuss specific display requirements." 179 F.4th at 183. And the 2015 assignments appeared in the Amended Complaint too. Am. Compl. ¶¶ 61-65. So these are not new allegations and they do not matter in any event.

Finally, proposed Count I gains nothing by invoking the Secretary's Order. *See* PSAC ¶¶ 122, 126-27. Count I identifies nothing in the Order itself that breached either Agreement. The alleged breach occurred at the President's House, where NPS removed the original panels, installed their replacements, and changed "the exhibit and its interpretive focus." *Id.* ¶¶ 123-25. But the Third Circuit held that removing the original panels was not reviewable "agency action." *Philadelphia*, 179 F.4th at 183-84. And its reasoning applies equally to installing the replacements. Both decisions concern which exhibits NPS displays at the Site.

The Court should thus deny leave to re-plead Count I. And it should grant the

Government's pending motion to dismiss Count I of the Amended Complaint for lack of subject-matter jurisdiction (ECF No. 82).

### III. The Mandate Precludes the City's Proposed Requests for Restoration and Site-Specific Injunctive and Declaratory Relief

The City again seeks the relief that this Court ordered and the Third Circuit vacated. The preliminary injunction directed NPS "to restore the President's House Site to its physical status as of January 21, 2026" and barred "any and all further changes" without the City's agreement. ECF No. 54 ¶¶ 2-3. The PSAC likewise asks for "[a]n order returning the President's House Site to its status as of January 21, 2026." PSAC at 39 (Relief Sought ¶ B). It also seeks a declaration that NPS acted unlawfully by "unilaterally removing and replacing" the exhibits and a permanent injunction prohibiting NPS from doing so "without complying with the APA and all applicable law." *Id.* (Relief Sought ¶¶ A, C); *id.* ¶ 8. The Third Circuit's mandate forecloses that relief for three reasons.

*First*, each request targets the site-level decisions at issue on appeal. The APA authorizes courts to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2), but the Third Circuit held that removing the exhibits was neither "agency action" nor "final." *Philadelphia*, 179 F.4th at 183-86. A declaration that the removal was unlawful would require this Court to review the very decision the Third Circuit held unreviewable, and restoration would undo it. Relief C would extend that review to future decisions about replacing the exhibits by making APA compliance a condition of the injunction. Challenging the Secretary's Order does not convert those curatorial decisions into reviewable agency action.

*Second*, the requests presuppose a right that the Third Circuit held the City lacks. Relief C would bar NPS from "removing and replacing the collaboratively-designed"

exhibits. It thus treats the City's past involvement with the exhibits as a continuing limitation on what NPS may display. That is a claimed right to co-curate the Site, yet the City "does not have any statutory, property, or contractual rights that empower it to curate the exhibits." *Philadelphia*, 179 F.4th at 186. And NPS's duty to maintain the Site is "not a promise that the exhibits will forever remain in place regardless of the owner's wishes." *Id.* at 183.

*Third*, the Third Circuit already rejected this relief at this Site. It vacated the injunction because this Court "lacked jurisdiction" over the claims underlying the injunction. *Philadelphia*, No. 26-1348, Doc. 120 at 2. It explained that its holding "equates to an utter lack of likelihood of success on the merits of those claims to support the preliminary injunction issued, including any continued application of it." *Id.* at 2 n.1. A permanent version of the same relief would not "implement both the letter and spirit of the mandate." *Kilbarr*, 990 F.2d at 87-88 (quotation omitted).[4]

## CONCLUSION

At a minimum, the Court should deny leave to amend as to proposed Counts I and VI and the City's requests for site-specific declaratory and injunctive relief, including restoration. Specifically, the Court should deny leave as to Relief Sought ¶¶ B and C, the restoration and injunctive requests in ¶ 8, and the language in Relief Sought ¶ A from "*i.e.*" through "interpretative panels." The Court should also grant the Government's motion to dismiss Count I of the Amended Complaint (ECF No. 82). If necessary, the Government will address the remaining claims by Rule 12 motion.

---

4 The City's motion also asserts that the equities favor "entry of a preliminary injunction returning the President's House to its status as of January 21, 2026" and "entry of a temporary restraining order enjoining further removals and changes." ECF No. 119 at 3. But the City has not moved for such relief, and such a motion would further contravene the Third Circuit's mandate.

Dated: November 23, 2026

Respectfully submitted,

JONATHAN GUYNN
Acting Assistant Attorney General
Civil Division

MICHAEL VELCHIK
Senior Counsel to the Assistant
Attorney General

DAVID METCALF
United States Attorney

*/s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8200
Email: gregory.indenberken@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, I filed Defendants' Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint using the Court's CM/ECF system and thus served all counsel of record via CM/ECF.

*/s/ Gregory B. in den Berken*
GREGORY B. IN DEN BERKEN